Edward F. STROECKER, Appellant,

v.

Glorine E. STROECKER, Appellee.

No. 682.

Supreme Court of Alaska.

June 8, 1967.

Robert A. Parrish, Fairbanks, for appellant.

Warren A. Taylor, Fairbanks, Dale J. Briggs, of Berringer, Briggs & Barnes, Tulsa, Okl., for appellee.

Before NESBETT, C. J., DIMOND, J., and SANDERS, Superior Court Judge.

## OPINION

**SANDERS, Superior Court Judge.**

This is an appeal from the judgment rendered against appellant in a divorce proceeding brought by appellee.

The parties were married in 1942, and are the parents of three children. At the time of the trial the son was 20 years of age, and the two daughters were 12 and 17 years of age. Appellee's amended complaint made the usual allegations of domicile and marriage and asked for a divorce on the grounds of personal indignities rendering her life burdensome, incompatibility of temperament, adultery, habitual gross drunkenness, and cruel and inhuman treatment calculated to impair health and endanger life. In his answer, appellant denied the allegations and alleged forgiveness and condonation. Appellant counterclaimed for a divorce on the grounds of incompatibility of temperament and further alleged that appellee had treated him with extreme cruelty and had wrongfully inflicted grievous mental suffering upon him.

During the eleven-day trial the evidence disclosed that the marriage had been a stormy and turbulent one. Both parties, over the years, had problems arising from drinking alcoholic beverages to excess. Appellant's problems were more extensive in that he was a heavy and continuous drinker and sought treatment for alcoholism. The conduct of both parties left much to be desired. Appellee was not free from fault.[1]

The trial court found that there was an incompatibility of temperament existing between the parties; that appellant had subjected appellee to cruel and inhuman treatment calculated to impair her health and endanger her life; that appellant had committed adultery and granted appellee a divorce.

The court awarded the custody of the youngest child of the parties to appellee and ordered appellant to pay $100 a month for her support. Appellant was ordered to pay the guardian of the parties' other daughter $150 a month for her support. Appellant was also ordered to pay $400 a month as alimony to appellee.

Appellant contends, first, that the property division is clearly unjust and, second, that the property division is manifestly unsuitable to both the nature of the properties and the circumstances of the parties.

Alaska law provides that the court in a divorce proceeding may divide the parties' joint or separate property "in [a] manner as may be just, and without regard as to which of the parties is the owner of the property."[2]

This court has held that all property of the parties, both separate and joint, is before the court for disposition in a

---

1. There was evidence that appellee struck appellant on the head with a milk bottle; struck appellant in the mouth with a telephone; had telephoned a threat to kill him with a loaded pistol which she was carrying in her purse; and attempted while he was sleeping to attack his privates with ice tongs. Appellee stated on several occasions she was "going to break him." She had frequently locked him out of the family home and thrown his clothes into the street.

2. AS 09.55.210 *Judgment.* In a judgment in an action for divorce * * * the court may provide
   * * *
   (6) for the division between the parties of their joint property or the separate property of each, in the manner as may be just, and without regard as to which of the parties is the owner of the property; and to accomplish this end the judgment may require one of the parties to assign, deliver, or convey any of his or her real or personal property to the other party.

divorce action.[3] The division of property under AS 09.55.210(6) is left to the broad discretion of the court, and will not be reversed in the absence of a showing that it is clearly unjust.[4] This discretion is not an arbitrary one, but is a sound judicial discretion and is subject to review by this court. The factors to be considered by the trial court in determining property division and alimony issues were set forth in Groff v. Groff[5] and Merrill v. Merrill[6] as follows:

[T]he respective ages of the parties; their earning ability; the duration and conduct of each during their marriage; their station in life; the circumstances and necessities of each; their health and physical condition; *their financial circumstances, including the time and manner of acquisition of the property in question, its value at the time and its income producing capacity if any.* (Emphasis added.)

We have examined the record in some detail in connection with the property division and the points raised by appellant.

The family home, located in Weeks Subdivision, was awarded to appellant by the court on condition that he pay to appellee the sum of $15,000 in ten equal yearly installments. This property had an approximate value of $50,000 at the time of trial. It was encumbered by an FHA mortgage in the sum of $12,000. In addition, an encumbrance of $20,000 had been placed against it in August of 1963 which had been reduced in an unknown amount by the time of trial. The approximate unencumbered value of this property at the time of trial was $18–20,000. The approximate value of this award to appellant was $6,850. The approximate present value of this award to appellee was $12,150.

The one-third interest in certain Stroecker Partnership properties owned by appellant in partnership with his brother and sister were divided equally between the parties as follows:

(a) A one-third interest in the Old Stroecker Homeplace which was inherited by appellant in 1954 had a value of $8,666.67 at the time of trial. This value was awarded equally between the parties, $4,333.33 going to each.

(b) A one-third interest in the Marion Building which had a value of $25,000 at the time of trial was divided equally between the parties, $12,500 going to each.

(c) A one-third interest in the Stroecker Building which had a value of $25,000 at the time of trial was divided equally between the parties, $12,500 going to each.

(d) A one-third interest in the Wendell Avenue Lots which had a value of $5,000 at the time of trial was divided equally between the parties, $2,500 being awarded to each.

(e) A one-third interest in the Farmer's Loop Acreage which had a value of $5,333.33 at the time of trial was divided equally between the parties, $2,666.66 going to each.

The one-half interest the parties owned in the Harding Lake Lot which had a value of $4,500 at the time of trial was awarded to appellant.

706⅙ shares of stock of the First National Bank of Fairbanks having a market value of $197,710.80 were divided between the parties. Appellant received 439.11 shares having a market value of $122,950.80. Appellee received 267 shares having a market value of $74,760. Appellant was awarded the voting rights in the stock awarded to appellee. The stock awarded to appellant appears to have a reasonable as-

3. Rhodes v. Rhodes, 370 P.2d 902, 905 (Alaska 1962).

4. Merrill v. Merrill, 388 P.2d 259, 261 (Alaska 1964); McSmith v. McSmith, 387 P.2d 454, 455 (Alaska 1963); Crume v. Crume, 378 P.2d 183, 186 (Alaska 1963);

Merrill v. Merrill, 368 P.2d 546, 547 (Alaska 1962).

5. Groff v. Groff, 408 P.2d 998, 1001 (Alaska 1965).

6. Merrill v. Merrill, 368 P.2d 546, 547–548 n. 4 (Alaska 1962).

surance of returning to appellant an income of approximately $3,950.99 per annum based on past payments of dividends at the rate of $9 per share. The bank stock awarded to appellee on the same basis would return an annual income of $2,403 to appellee.

Appellant contends in his brief that this stock was inherited by appellant from his mother in 1954 and should not have been distributed in the manner in which it was in view of the fact that it was inherited property and, in addition, was a necessary vehicle for appellant to maintain his position on the board of directors of the bank which position was the source of most of his income. The record does not substantiate appellant's claim. The record does indicate that appellant owned approximately 150 shares of bank stock before his mother's death in 1954. By reason of subsequent successive 100 percent and 66.67 percent stock dividends appellant's pre-1954 holdings were increased to 504 shares.

Stock in Northern Television, Inc., having a value of $2,500 at the time of trial; stock in Cushman Investment, Inc., having a value of $7,000; stock in Independent Lumber Inc., having a value of $1,000; furnishings in the family home having a value of $3,000; a one-fourth interest in the Healy Lake cabin having a value of $400; fishing and hunting equipment having a value of approximately $1,180; a Jamesway Hut having a value of $250 and certain oil lease rights having a value of $2,500 were all awarded to appellant.

Life insurance policies, having unencumbered cash values of an undetermined amount, were awarded to appellant.[7]

It appears from the record that the net income from appellant's undivided one-third interest in the Marion Building, the Stroecker Building, and the Wendell Avenue Lots totaled $6,000 per year. The award provided that this income was to be distributed equally between the parties.

It appears from the record that appellant would be required to assume certain liabilities as a result of property division approximately as follows:

| | |
|---|---|
| First National Bank of Seattle | $15,000 |
| Debt owed to Lloyd Burgess | 8,000 |
| Debt owed to C. J. Newlin | 6,000 |
| Miscellaneous bills | 463 |
| | $29,463 |

From the record it appears that appellant's fixed annual expenditures as a result of the property division would be approximately as follows:

| | |
|---|---|
| Court ordered alimony and child support payments | $ 7,800 |
| Payments to liquidate appellee's, court awarded, $15,000 interest in the family home | 1,500 |
| Estimated federal and state income taxes and other taxes | 6,350 |
| Estimated interest payments on mortgages and loans | 3,000 |
| Estimated principal payments on FHA loan | 1,000 |
| | $19,650 |

The approximate total net value of assets awarded to appellant was $157,168. The approximate total value of assets awarded to appellee was $121,410. Appellant was awarded approximately 56.4 percent of the total net worth before the court for division and appellee was awarded 43.6 percent. In making the division, bank stock and the 1/3 interest in the Stroecker Partnership properties which were inherited by appellant were placed in the same category as property acquired by the parties during the marriage.

Appellant's income as a result of the settlement would appear to be approximately as follows:

| | |
|---|---|
| Salary as bank officer | $20,000 |
| Dividends on remaining bank stock | 3,952 |
| Income from remaining Stroecker property | 3,000 |
| Miscellaneous income | 100 |
| | $27,052 |

7. The total face value of the life insurance policies was $85,000. The appellant had borrowed $11,650 against the cash value of these policies.

It appears that the regular obligations required to be met out of appellant's income would leave him only $7,402 with which to pay his own living expenses. This is insufficient.

. On the other hand, appellee's annual income from all sources, including alimony and child support would be approximately $12,903 before taxes, not considering the amount she would be able to earn at regular employment.

In view of the above we do not consider the over-all result of the judgment to be just and equitable. Accordingly, the judgment below is ordered revised to provide that appellant shall pay $200 per month to appellee as alimony instead of $400 per month. The property division and judgment in all other respects is affirmed.

■ Appellant's third allegation of error is that the trial court clearly erred in rejecting the testimony of Dr. John Weston relative to the state of mind and mental attitude of appellee toward appellant. Dr. Weston testified that he had been the family doctor for a great many years and knew the parties professionally as well as socially. Briefly, the evidence showed that appellee called appellant at his apartment and also at his office in the bank and threatened to kill him with a loaded pistol she was carrying in her purse. Appellant then called Dr. Weston and asked him to visit appellee and give her something to calm her down. Appellant attempted to elicit testimony from the doctor at the trial concerning the condition of appellee's state of mind toward appellant at the time he visited her. The appellant's position is that the doctor could testify to appellee's state of mind and that the evidence would show that appellee was of a violent nature where appellant was concerned. The court sustained an objection on the basis of the physician-patient privilege.[8] This incident of appellee threatening to kill appellant was fully testified to by both appellant and appellee. Assuming appellant's interpretation of Alaska's Civil Rule 43(h) (4) is correct, and the appellee had waived the physician-patient privilege during the course of the trial, the offer of proof advanced by appellant was satisfied by other evidence. Therefore, exclusion of Dr. Weston's testimony, if erroneous, was harmless error and not prejudicial.

Subject to the revision hereinbefore mentioned, the judgment below is affirmed.

8. Civ.R. 43(h) (4) provides that:
   A physician or surgeon shall not, against the objection of his patient, be examined in a civil action or proceeding as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient.