**Teresa Kimball Peterson BURRELL,**
**Appellant,**

v.

**Homer BURRELL, Appellee.**

No. 1169.

Supreme Court of Alaska.

June 27, 1975.

Timothy M. Lynch, Anchorage, for appellant.

Suzanne C. Pestinger, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR and BOOCHEVER, JJ.

## OPINION

RABINOWITZ, Chief Justice.

Appellant asserts that the superior court committed an abuse of discretion in failing to divide the parties' marital estate properly.

The parties were married in 1950 and are childless. Appellee Homer Burrell obtained a B.S. in foreign service from Georgetown University and a Masters in International Law and Diplomacy from the Fletcher School of Tufts. Homer then worked for the Union Oil Company for fourteen years and at the behest of Union attended law school. After receiving his J.D. in 1963, Homer returned to Alaska as State Director of Oil and Gas. He remained in that post until the new administration began functioning in December of 1974.

Appellant Teresa Burrell majored in zoology and was granted a B.S. in that field of study. She worked as a laboratory technician before her marriage and again for a few months in 1966 and 1967. Otherwise, she has not been employed during the marriage. This circumstance appears to be attributable to lack of need and in part to the limitations of Teresa's physical condition. She has had one spinal fusion, and a physician has recommended that the fusion be extended. She has also had corrective surgery for foot problems which resulted from a childhood attack of polio. These factors apparently limit her ability to stand for long periods and to climb stairs. In 1970 she had a slow-growing tumor removed. The treating surgeon thought the tumor malignant but no recurrence has been observed to date. Appellant has also been undergoing treatment for depression since the inception of the divorce proceedings in the case at bar, although her psychiatrist indicated she had overcome most of her emotional problems.

Finding an existing incompatibility of temperament the superior court granted the parties a decree of divorce. The trial court ordered that Homer was to pay Teresa maintenance at the rate of $800 per month for the first two years, $500 per month for the following eight years, and $300 monthly until her death or remarriage. The focus of controversy in this appeal concerns an asset which was not awarded to Teresa in the court's division of the marital estate. During the parties' marriage Homer inherited a one-fourth interest in a trust estate consisting of 400 acres of land in California. At the time of trial the trust was valued at $1,167,000. The trust vested when Homer became 45;

he is now 50 years old. It has not been distributed, however, because of pending litigation in California which could substantially raise the value of the land if it is successful.[1]

In this appeal Teresa contends that the superior court's property division amounted to an abuse of discretion because the California property was not included in the marital estate for purposes of division:[2] Teresa argues that, due to the failure of the trial court to include Homer's interest in the California property along with the remainder of the marital estate of the parties, the court's property division fails to provide her with adequate support monies. It is also relevant that in the course of any marriage Teresa received an inheritance of her own totalling approximately $50,000. A large portion of this sum was used by the Burrells to make joint investments. *See* note 4, *infra.*

The statutory basis for property divisions in divorces is found in AS 09.55.210:

> In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide . . .
>
> (3) for the recovery by one party from the other of an amount of money for maintenance, in gross or in installments, as may be just and necessary without regard to which of the parties is in fault;
>
> . . .
>
> (5) for the appointment of one or more trustees to collect, receive, expend, manage, or invest, in the manner the court directs, any sum of money adjudged for the maintenance of the wife or the nurture and education of minor children committed to her care and custody;

> (6) for the division between the parties of their property, whether joint or separate, acquired only during coverture, in the manner as may be just, and without regard to which of the parties is in fault; however, the court, in making the division, may invade the property of either spouse acquired before marriage when the balancing of the equities between the parties requires it; and to accomplish this end the judgment may require that one or both of the parties assign, deliver, or convey any of his or her real or personal property to the other party . . .[3]

Subsection (6) of AS 09.55.210 formed a partial basis for the superior court's division of the parties' property. This consideration is reflected in the following portions of the superior court's decision:

> It appears to me that property acquired before marriage is not to be invaded unless justice requires it. The law in 09.55.210(6) says for the division of property between the party or the division between the parties of their property, either joint or separate acquired only during coverture the matters may be just without regard to which parties is at fault. However, the court in the division may invade property of either spouse acquired before marriage when the balancing of the equities, etc. requires it. *I find that the inheritance is the same.* It falls into the same classification and should be treated in the same way as property acquired before marriage and therefore should not be invaded unless justice required it. Then, understanding that there are substantial problems in having these parties own property together or having mutual in-

1. Homer is co-trustee of the trust which was established by his parents. The trust estate consists entirely of 300 acres of farm land near the city of Fairfield, California and 100 acres of adjoining land.

2. Appellant further contends that the superior court abused its discretion in the matter because it refused to appoint a trustee to manage the parties' property and because the court failed to award her sufficient attorney's fees.

3. The quoted text set forth above is from the statute as it read at the time the decree in the case at bar was issued; shortly thereafter it was amended so as to change all references to "wife" to "one of the parties" (Ch. 127, §§ 72, 73 SLA 1974). This amendment has no bearing on the issues here.

terest, joint interest in the same property because of litigation and the fact that they aren't any more likely to agree upon what to do with their property in the future than they have been unable to agree upon *anything* during the last nine months, I am going to do the following: . . . (emphasis added)

The superior court then proceeded to detail the property division.[4]

■ In *Merrill v. Merrill*, 368 P.2d 546, 547–48 (Alaska 1962), this court alluded to criteria which should govern division of marital estates in Alaska. There we said:

It has been held that the principal factors to be considered by the trial court in determining the question of alimony or division of property as between the parties are the respective ages of the parties; their earning ability; the duration and conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances, including the time and manner of acquisition of the property in question, its value at the time and its income producing capacity if any. [citations omitted] [5]

Our usual approach to problems of property division has been to emphasize the trial court's broad discretion, which will not be reversed absent clear evidence of an unjust property division.[6]

In *Vanover v. Vanover*, 496 P.2d 644 (Alaska 1972), we were confronted with claims of inadequate property division and misinterpretation of AS 09.55.210(6), regarding property acquired before trial. We held that a "balancing of the equities" justified invading the husband's precoverture estate where the wife's efforts and contributions during the marriage had enabled him to retain most of that estate intact. In remanding to the superior court for a redetermination of the property division, we indicated that the wife's share should be increased.[7] Of particular significance to this case is that portion of *Vanover* where we stated:

Where one spouse has made contributions to the marital community, whether of a pecuniary or of a more intangible nature, and where these contributions have benefited in any manner the separate property of the other spouse acquired before the marriage, we believe that the trial court may determine that all or a portion of that property should be included with the property acquired after marriage in effecting a just and equitable division of property.[8]

Of further significance is our opinion in *Ross v. Ross*, 496 P.2d 662 (Alaska 1972), which was handed down the same day as *Vanover*. There the wife was awarded none of the property acquired during the marriage and was ordered to transfer to

4. In the course of announcing the property division, the superior court further commented: . . . The lots in Huntington Park, because they were purchased with funds that she had inherited, go to her. The Prator Lake property, because a down payment was made by her, goes to her . . . In 1968 Teresa began to receive an inheritance of her own which totalled approximately $50,000.

5. The *Merrill* standards have received repeated confirmation: Moore v. Moore, 499 P.2d 300 (Alaska 1972); Vanover v. Vanover, 496 P.2d 644 (Alaska 1972); Stroecker v. Stroecker, 428 P.2d 384 (Alaska 1967); Groff v. Groff, 408 P.2d 998 (Alaska 1965).

6. In *Rhodes v. Rhodes*, 370 P.2d 902 (Alaska 1962); *Crume v. Crume*, 378 P.2d 183

(Alaska 1963); and *Stroecker v. Stroecker*, 428 P.2d 384 (Alaska 1967) abuses of discretion were found where the property divisions, coupled with maintenance awards, threatened to take practically all of one spouse's income.

7. We noted, however, "this is not to say that we think an equal division of . . . property would be appropriate on this record." Vanover v. Vanover, 496 P.2d 644, 648 (Alaska 1972).

8. 496 P.2d at 648. In *Vanover* we noted that the *Merrill* criteria have continuing validity, including relevancy regarding the question of division of precoverture property.

the husband a portion of her precoverture property. The order resulted in an approximately equal division of their combined real property interests.[9] We upheld the trial court on the ground that the husband had made substantial contributions in money and work, to the value of the wife's properties.

With these legal principles in mind we turn next to the specifics of the superior court's property division in the case at bar. As to real property the superior court made the following division:

1. House in Anchorage: This house was paid for by Homer and had an equity of approximately $15,000. Awarded to Teresa.

2. Two lots in Huntington Park, Anchorage: Purchased with Teresa's funds and valued at $35,000. Awarded to Teresa.

3. Seldovia property consisting of a 1/5 interest in 138 acres and 1/3 interest in cabin: Teresa paid the $3,000 down payment. Homer paid balance and helped fix up cabin. At time of trial equity was nearly $5,000. Awarded to Teresa.

4. Prater Lake Lot: Teresa paid the down payment and equity was $3,000 at time of trial. Awarded to Teresa.

In addition to the real properties listed above the trial court awarded Teresa the following stocks:

1. 484 shares of Union Oil which had a value as of February 18, 1974 of $21,780. These stocks were purchased by Homer and yield an annual dividend of $882.

2. 100 shares of British Petroleum. Valued as of February 18, 1974 at $1,200. These shares were purchased by Teresa.

3. 30 shares of Pacific Lighting. Valued at $600 as of February 18, 1974.

Concerning the parties' insurance the superior court made the following awards:

1. G.I. Life Insurance Policy: Value $10,000 less outstanding loan. By law Homer must retain title. The superior court ordered Homer to pay the interest on the loan. The policy was awarded to Homer with Teresa named as beneficiary.

2. N.Y. Life Insurance Policy: Value at time of hearing was $1,000 due to outstanding loan. This policy was awarded to Homer.

3. Two Connecticut Life Insurance Policies: These policies were awarded to Homer, who was required to pay interest on the loan. Teresa named as beneficiary of these policies.[10]

This leads us to the paramount question raised by this appeal, namely, whether the property division, as ordered, is "just" in terms of what properties were granted to Teresa. The superior court decision gives her approximately $81,500 worth of assets: $58,000 in real property (these properties were purchased with $41,000 of Teresa's funds) and $23,500 in stocks (values of the date of the decision). As was mentioned previously, Homer was also ordered to pay support in the amount of $800 monthly for two years, $500 monthly for the next eight years, and $300 monthly thereafter until Teresa's death or remarriage.[11] Assuming

9. In *Ross* the superior court found that the husband had "moderate" earning ability, while the wife's was minimal; that the husband's health was good and that the wife "suffers from several disabilities requiring regular medication"; and that the husband was relatively financially secure while the wife was "almost completely without liquid assets or cash income".

10. The superior court also awarded the parties' 1971 Toyota to Teresa, and the 1961

Corvair to Homer. Checks in the amount of $2,481 were awarded evenly to the parties. The household furnishings were awarded to Teresa with Homer being given a canoe and camera. Each party was allowed to retain personal belongings.

11. In order to retain ownership of the real properties which were awarded to her, Teresa would have to pay the following sums: family residence in Anchorage—$433 monthly; Seldovia property—$100 monthly; Prater

Teresa has some investment sense, as the superior court judge found she had, her return on the $81,000, combined with the support monies, would give her an annual income of $15,520 for the first two years, $12,520 for the next eight years, and $10,120 after that.[12]

The superior court's decision left Homer with his trust fund intact, his personal belongings, "ownership" of the life insurance policies, and his private law practice income.[13] Homer has considerable debts.[14] On the other hand, Homer can look forward to utilization of his ¼ interest in at least $1,167,000, the value of the California trust estate.

■ We think there is considerable justification in Teresa's assertion that the superior court's failure to award her any portion of Homer's interest in the California property constituted an abuse of discretion. In light of the factors we have alluded to, namely, Teresa's age (she is approximately 50 years old), existing and future health problems, her limited earning capacity, the twenty-five years duration of the marriage, and the fact that a substantial amount of the properties awarded to her were purchased with her separate in-heritance funds, we believe that a just division of the property of the parties required invasion of Homer's separate property,[15] i. e., his California property, and the award of some portion of Homer's interest in this property to Teresa.[16] Without such an adjustment we are of the view that the decree as it now stands has placed Teresa in a tenuous financial position: one which will in all likelihood require her to use the principal of her estate to meet living expenses and one in which any future major medical expense could seriously impair her financial situation. We therefore conclude that the case must be remanded to the superior court for the purpose of redetermination of the property division by making an appropriate award of a portion of Homer's interest in the California property to Teresa.[17]

■ Teresa also complains that only $2,000 was awarded to her in attorney's fees. We note that the usual Civil Rule 82 "prevailing party" attorney's fee award is not the basis of the demand in cases of this character, but rather the statute authorizing orders regarding fee payments and expenses pendente lite in divorce actions.[18]

Lake property—$1,200 annually. Thus, the record discloses that Teresa will have to pay in excess of $600 monthly in the event she elected to keep the real properties which were awarded to her.

Teresa is also apparently entitled to receive social security benefits. In announcing the amounts Homer would be obligated to pay as support, the trial judge said in part, "this is with the understanding that she is entitled to social security."

12. This assumes a rate of return of 8% on low-to-moderate risk investments.

13. At the time the hearings were held in this matter Homer, as State Director of Oil and Gas, made $31,776. Homer left this position in December of last year to enter private practice of the law in Alaska.

14. Homer testified that he owed $20,000.

15. Without deciding the issue, we have assumed for the purposes of this opinion that Homer's interest in the California property is deemed to be property acquired before coverture.

16. In this regard in *Vanover v. Vanover*, 496 P.2d 644, 648 (Alaska 1972), we said in part:

In determining whether separate property acquired before marriage should be invaded, the court should particularly consider factors such as the duration of the marriage, the conduct of the parties during the marriage, the manner of acquisition of the property, its value at the time of acquisition and at the time of the property division, and any other factors bearing on whether the equities dictate that the other spouse is entitled to share in that property.

17. By virtue of our remand on this point we do not intend to intimate that Homer's interest in the California property must be divided equally. Vanover v. Vanover, 496 P.2d 644, 648 (Alaska 1972).

18. AS 09.55.200(a)(1). *See* Houger v. Houger, 449 P.2d 766, 777 (Alaska 1969); Vanover v. Vanover, 496 P.2d 644 (Alaska 1972). AS 09.55.200(a)(1) provides:

During the pendency of the action, the court may provide by order

Since we have concluded that a remand is required in the case at bar, we have further determined that on remand the superior court should undertake a re-evaluation of its award of attorney's fees to Teresa.[19] Whether or not to make any award pursuant to AS 09.55.200(a)(1) as well as the amount of any such award, is committed to the sound discretion of the trial court. The parties' relative economic situations and earning powers are relevant factors to be weighed in determining whether to order payment pursuant to AS 09.55.200(a)(1).

Remanded for further proceedings in conformity with the foregoing.

ERWIN and BURKE, JJ., not participating.

(1) That the husband pay an amount of money as may be necessary to enable the wife to prosecute or defend the action. Teresa in her reply brief to this court makes the assertion that her trial attorney's fees amounted to over $9,000.

19. Our disposition of this appeal has made it unnecessary to decide any other issue presented in this appeal.