Barbara Jo COOPER, Appellant,

v.

STATE of Alaska, Appellee.

In re R. J. M., a Minor.

Christopher K. COOPER, Appellant,

v.

Barbara Jo COOPER, Appellee.

Nos. 4906, 4970.

Supreme Court of Alaska.

Dec. 24, 1981.

Wayne Anthony Ross, Anchorage, for appellant-appellee Barbara Cooper.

David T. LeBlond, Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee State of Alaska.

Jeanne Ames Riley, guardian ad litem for R. J. M.

Max F. Gruenberg, Jr., Gruenberg & Frenz, Anchorage, for appellant Christopher K. Cooper.

Before RABINOWITZ, C. J., CONNOR, and MATTHEWS, JJ., and GERALD VAN HOOMISSEN and WARREN W. TAYLOR, Superior Court Judges.*

## OPINION

CONNOR, Justice.

These cases raise the issues of whether the superior court erred in denying a parent her costs and attorney's fees in a child in need of aid proceeding,[1] or in awarding substantially the same costs and fees on a carry-over basis in a subsequent custody proceeding.

---

\* Van Hoomissen and Taylor, Superior Court Judges, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. See AS 47:10; Alaska Rules of Children's Proceedings.

Barbara Jo Cooper (now Tanner) and Christopher K. Cooper were married in February, 1974, and divorced in January, 1978. During their marriage the couple cared for three children, two of whom, R.J.M. and F.J.C., were Barbara Tanner's natural children by former marriages. Only K.M.C. was a natural child of this marriage. The parties' petition for dissolution of their marriage stated that they had agreed that custody of K.M.C. was to be with Barbara Tanner, and that the father, Christopher Cooper, was to have reasonable visitation rights. The petition was silent as to R.J.M. and F.J.C.

Six months after the dissolution, in July, 1978, Christopher filed a motion in the superior court seeking custody of all three children, alleging in part that he was the "psychological parent" of R.J.M. and F.J.C. Christopher made no further filings in the custody action until July, 1979, when he opposed Barbara's motion to dismiss.

Before the custody action actually went forward, however, R.J.M.'s circumstances changed. In June, 1978, upon the recommendation of the Alaska Community Mental Health Clinic, Barbara agreed to place R.J.M. in the Alaska Psychiatric Institute (API). Subsequent to R.J.M.'s admission, the staff at API advised Barbara that the dispute between her and Christopher over custody of R.J.M. was disturbing R.J.M.'s treatment. The staff advised Barbara that R.J.M. should be insulated from that dispute, and that the best means of accomplishing this would be to make R.J.M. a ward of the state so that he could be placed in a temporary foster home. According to Barbara, the API staff assured her that regaining custody of R.J.M. would be a simple matter. Based on these assurances, Barbara acquiesced and, in October, 1978, the state filed a petition to adjudicate R.J.M. a child in need of aid. *See* AS 47.10.010(a)(2)(A). Shortly thereafter the court entered an order granting the petition, based on Barbara's acquiescence.

Approximately four months later, in March, 1979, the state filed a notice of its intent to transfer custody of R.J.M. to Christopher. Barbara objected by filing a motion to set aside the child in need of aid adjudication, contending that she misunderstood the consequences of stipulating to state custody of R.J.M. On the same day Christopher moved to intervene, seeking to obtain physical custody of the child but leaving legal custody of R.J.M. in the state. The court allowed Christopher's participation in the matter, although apparently it did not actually rule on his intervention motion. After an evidentiary hearing on April 6, 1979, Barbara's motion was granted, returning legal and physical custody of R.J.M. to her.

Thereafter, on April 10, 1979, the state filed a new, or amended, petition urging adjudication of R.J.M. as a child in need of aid. Christopher also participated in this hearing. The hearing on that petition lasted twenty days, and resulted in an order, on May 7, 1979, denying the state's petition.[2] Barbara moved for costs of $967.50 and attorney's fees of $15,507.75 on the ground that she was the prevailing party. Christopher filed a cross motion for his costs of $15.00 and attorney's fees of $11,146.50. The court ruled against both motions, refusing to award costs or fees to either party. Barbara appeals from this decision.

Following the conclusion of the child in need of aid proceeding, Barbara moved to dismiss Christopher's July, 1978, motion for custody. She argued in part that res judicata and collateral estoppel precluded granting him custody of R.J.M. R.J.M.'s guardian ad litem supported the motion to dismiss. Christopher's opposing pleadings stated that he no longer sought custody of R.J.M., but rather merely the implementation of his rights of visitation regarding R.J.M., and the other two children, K.M.C. (his natural daughter) and F.J.C.

On July 26, 1979, Barbara moved to peremptorily disqualify Judge Buckalew. Judge Carlson, apparently as acting presid-

---

**2.** Findings of fact and conclusions of law were entered July 27, 1979, specifying that custody of R.J.M. was with Barbara, and granting Christopher reasonable visitation rights.

ing judge, denied the motion on the ground that Judge Buckalew had spent three weeks on the related child in need of aid case. The next day Judge Buckalew, apparently acting presiding judge for that day, vacated Judge Carlson's order and assigned the case to Judge Ripley for motions only. That same day, July 27, 1979, Judge Ripley denied Barbara's motion to dismiss and ordered the case to go forward on the limited issue of Christopher's visitation rights.

Four days later, on July 31, 1979, Barbara renewed her motion to dismiss. The memorandum attached to that pleading indicates that neither Barbara nor her attorney were aware, at that time, of Judge Ripley's order denying the dismissal motion. That same day Judge Carlson granted Barbara's motion, and dismissed the case with prejudice. Christopher appeals from this dismissal.

Approximately one week later, on August 8, 1979, Barbara moved in the custody proceeding (No. 4970) for costs of $967.50 and attorney's fees of $16,892.75. All of these costs and a substantial portion of these fees were sought in the child in need of aid proceeding. Barbara's basic argument was that costs and fees should carry over, because the issues and proofs in the child in need of aid action and in the custody action were "so closely interrelated" as to "be almost totally indistinguishable" and, therefore, her costs and fees should be recoverable pursuant to Civil Rule 82. In opposition, Christopher argued that the costs and fees in the two cases were separable, that the issue of costs and fees was res judicata based on the court's denial of costs and fees

in the earlier action, that there was no jurisdiction for the court to award costs or fees from the prior case, that Civil Rule 82 does not apply to dissolution actions, and that equity did not require an award of costs and fees. On September 14, 1979, the court awarded Barbara the full costs and fees requested against Christopher. Christopher appeals from this ruling.

## A. Costs and Fees In The Child In Need of Aid Proceeding

The first issue we must address is whether the superior court has authority to award costs and fees in a child in need of aid proceeding, and, if so, whether it abused its discretion in failing to do so. On appeal Barbara presents several theories in support of her argument that the superior court should have awarded her costs and fees against both the state and Christopher.[3]

Barbara's first argument is that the character of the litigation under AS 47.10 (children in need of aid) is similar to that in adoption proceedings, see AS 20.15; and in custody proceedings, see AS 09.55.205; and that since costs and attorney's fees are available in those actions, see *Adoption of V. M. C.*, 528 P.2d 788, 795–96 (Alaska 1974); AS 09.55.200(a)(1); that it would, therefore, be inconsistent to not allow costs and fees in a child in need of aid proceeding. Thus she argues that Civil Rule 82,[4] or AS 09.55.200,[5] should apply, and that the trial court erred in not awarding her costs and fees.

3. Barbara's original motion was treated by the parties as seeking fees against both Cooper and the state.

Apart from the general issue of whether costs and attorney's fees can be awarded in an AS 47.10 proceeding, there are subsidiary issues of whether such fees are available against the state, as a sovereign, or against Christopher Cooper, as an alleged intervenor. Because we conclude that the superior court lacked power to award fees, we do not reach these specific issues.

4. Civil Rule 82(a) states, in part:
"(1) Unless the court, in its discretion, otherwise directs, the following schedule of attorney's fees will be adhered to in fixing such

fees for the party recovering any money judgment therein, as part of the costs in the action allowed by law...

Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion, in a reasonable amount."

5. AS 09.55.200 states, in part:
"(a) During the pendency of the action [for divorce or annulment], the court may provide by order
(1) that one spouse pay an amount of money as may be necessary to enable the other spouse to prosecute or defend the action ...."

Barbara concedes that children's proceedings under AS 47.10 are governed by the Rules of Children's Procedure, *see* Children's Rule 1(b),[6] and that these rules contain no provision for the award of attorney's fees. She argues, however, that Children's Rule 1(d) allows the superior court to utilize other authorizations for such an award. Children's Rule 1(d) states:

"*Situations Not Covered by Rule.* Where no specific procedure is prescribed by these rules, the court may proceed in any lawful manner, not inconsistent with children's statutes or these rules, which appears most likely to achieve the aims and purposes of such statutes and these rules."

Thus, Barbara's argument is that the phrase "in any lawful manner" encompasses Civil Rule 82, or, alternatively, AS 09.55.-200. The guardian ad litem adopts these arguments.

The state, on the other hand, argues that given our holding in *Kodiak Western Alaska Airlines, Inc. v. Bob Harris Flying Service, Inc.*, 592 P.2d 1200, 1204–05 (Alaska 1979), to the effect that Civil Rule 82 is inapplicable to actions governed by the Appellate Rules, it would be inconsistent to now apply Civil Rule 82 to actions governed by the Children's Rules. Further, the state argues that the provision in Children's Rule 1(d) applies solely to procedural matters and, it asserts, since the award of costs and attorney's fees is not a procedural matter, subsection (d) is inapplicable. As regards AS 09.55.200, the state argues that the statute, by its own terms, applies *solely* during the pendency of a divorce or annulment action, neither of which are involved in case No. 4906, which was a child in need of aid proceeding. Finally, it argues that the superior court cannot award costs and fees except when the legislature, or this court by rule pursuant to AS 09.60.010, has determined to allow such awards. *See State v. Smith*, 593 P.2d 625, 630–31 (Alaska 1979). Since no specific authority exists, it asserts that the superior court properly denied Barbara's motion for costs and fees. Christopher adopts these arguments.

We are persuaded by the state's arguments. The general authority to make costs and attorney's fees awards derives from AS 09.60.010. *Stepanov v. Gavrilovich*, 594 P.2d 30, 37 (Alaska 1979). That section states:

"*Costs allowed prevailing party.* Except as otherwise provided by statute, the supreme court shall determine by rule or order what costs, if any, including attorney fees, shall be allowed the prevailing party in any case."

There is no statute authorizing such awards in child in need of aid proceedings, nor have we promulgated any rule or order authorizing such an award.[7] Civil Rule 82 does not apply to actions governed by the Children's Rules, *see e.g., Kodiak Western*, 592 P.2d at 1204–05; nor is AS 09.55.200 applicable. Absent any applicable authorization, the superior court properly denied Barbara's motion for costs and attorney's fees in the child in need of aid proceeding.[8]

This result is supported by strong policy considerations advanced by the state. Children in need of aid proceedings are intended to promote an important public interest: the welfare of children. Exposing the state to costs and attorney's fees when a child is ultimately determined not to be in need of aid would significantly chill the state's willingness to commence protective proceedings for children. Such a result is inconsistent with the purposes underlying children's proceedings. Accordingly, we reject Barbara's argument that the court erred in denying recompense for her costs and fees.

---

**6.** Children's Rule 1(b) states: "The procedure in children's matters shall be governed by these rules."

**7.** The court does have the power to *appoint* counsel, at public expense, to represent the minor or the parents, in certain situations, in child in need of aid proceedings. *See* AS 47.-10.050; Children's Rule 15(a).

**8.** Given this resolution we decline to address the parties' arguments concerning who, under Civil Rule 82, the prevailing party may have been in No. 4906.

As alternative grounds for reversal, Barbara urges certain equitable bases for an award, namely, that the state's alleged bad faith in the litigation provides a basis for an award of costs and attorney's fees, or that she is entitled to her expenses, on the ground that the proceeding was one "imbued with the public interest." The superior court, however, specifically rejected a proposed finding that the state acted in bad faith by misleading Barbara and, therefore, the "bad faith" basis for an award was inapplicable on the facts.

▆▆ Nor are we persuaded that a parent who successfully challenges a child in need of aid petition is a "public interest litigant." In *Anchorage v. McCabe*, 568 P.2d 986 (Alaska 1977), we articulated three factors which determine whether a case is one in the public interest. These are: first, whether the action effectuated strong public policies; second, whether numerous people received benefits from the plaintiff's litigation success; and third, whether only a private party could have been expected to bring the action. *Id.* at 991. Barbara argues the public was benefited in that the state will no longer "rush into court" without a better examination of the child's existing family situation. We disagree with her basic argument. Barbara was seeking to vindicate her own interests, as well as those of R.J.M. Any benefit to the public as a result of her challenge to the state's petition is too attenuated to justify an award of costs and fees on this basis.

There is no authority for an award of attorney's fees in a child in need of aid proceeding and thus the superior court's denial of costs in No. 4906 is affirmed.

### B. The Custody Dispute

#### 1. Dismissal With Prejudice

The first issue in Christopher's appeal is whether the superior court erred in dismissing "with prejudice" his petition for modification of custody. Judge Ripley, to whom the case was assigned for motions, denied Barbara's motion to dismiss Christopher's petition and ordered the case to proceed on the question of visitation. Subsequently, Judge Carlson dismissed the petition with prejudice.

▆▆ The order of dismissal and the setting in which it was entered were quite irregular. Christopher, however, does not challenge Judge Carlson's authority to have granted the motion. Rather, he attacks the "with prejudice" provision. Even assuming that Judge Carlson had such authority, we hold that it was error to dismiss the petition with prejudice.

AS 09.55.205 clearly contemplates that parties may seek modification of custody or visitation orders. That section states, in part:

"In an action for divorce or for legal separation the court may, ... during the pendency of the action, or at the final hearing *or at any time thereafter during the minority of the child of the marriage*, make an order for the custody of or visitation with the minor child which may seem necessary or proper *and may at any time modify or vacate the order.*" (emphasis added).

▆▆ We think this section precludes a superior court from denying a motion for a change in custody "with prejudice." A motion to modify custody may be made at any time during the minority of the child involved, and the superior court has an obligation to consider such a request. *See Deivert v. Oseira*, 628 P.2d 575, 578 (Alaska 1981); *Sherry v. Sherry*, 622 P.2d 960, 965 (Alaska 1981). The court may, of course, deny any particular request for modification so long as it does not abuse its discretion in doing so. But it cannot preclude future requests for a change in custody. *Sherry*, 622 P.2d at 965. Of course, modification must generally rest upon some substantial change in circumstances. *Deivert*, 628 P.2d at 577–78. The order dismissing the modification motion with prejudice is reversed. We note that no jurisdictional issue is raised in this case as both parties and the child still reside in Alaska.

### 2. Costs and Fees In The Custody Dispute

Christopher's other argument on appeal is that the superior court erred in awarding Barbara her costs of $967.50 and attorney's fees of $16,892.75 in the custody proceeding. He points out that the award clearly encompasses the costs and fees incurred by Barbara in her defense of the child in need of aid petition, and argues that the carry-over was error on grounds: (a) that the denial of costs and fees in No. 4906 was the "law of the case" and therefore precluded the subsequent award; or (b) that the denial in No. 4906 is res judicata or collaterally estops the subsequent award; or (c) that the court abused its discretion, under AS 09.55.-200(a)(1), in awarding any costs and fees. Barbara, on the other hand, argues that the issues in the two proceedings were interwoven, and therefore asks us to hold that the costs and fees in the children's proceeding "carried over" to the custody action and are authorized by either AS 09.55.200(a)(1) or Civil Rule 82.

 We have previously held that in divorce or dissolution actions attorney's fees are not to be awarded solely on the basis of which party is regarded as the prevailing party. *Johnson v. Johnson*, 564 P.2d 71, 76–77 (Alaska 1977); *Burrell v. Burrell*, 537 P.2d 1, 6 (Alaska 1975). The parties' relative economic situations and earning powers are relevant to determining whether to order an award of attorney's fees, *Johnson*, 564 P.2d at 76; *Burrell*, 537 P.2d at 7. Further factors to be considered in this context are whether an equal amount of fees has been expended by the parties, and whether an equal amount of time and effort has been expended. *Johnson*, 564 P.2d at 76–77. Although often there is no party who can plainly be designated as the prevailing party, in other cases, such as the present one, one party clearly has prevailed and that factor too may be weighed in the balance. Finally, the decision of whether to make any award is committed to the sound discretion of the trial court. *Id.*

 The superior court in this case did not specify its reasons for awarding Barbara all the costs and fees she sought. Even so, in awarding her a total of $17,-860.25, we conclude that it abused its discretion. Barbara concedes that this award amounts to a carry-over of a substantial portion of the costs and fees incurred in the child in need of aid proceeding. In that proceeding she requested a total of $16,-475.25. The difference between that figure and the award in the custody proceeding is $1,385.00; this figure reflects Barbara's actual costs and attorney's fees in the custody proceeding. We can find no authority for the carry-over of the costs and fees of the earlier proceeding,[9] nor do we accept Bar-

**9.** The sole authority Barbara relies on is the following language from *United States v. Equitable Trust Co.*, 283 U.S. 738, 51 S.Ct. 639, 75 L.Ed. 1379 (1931):

"The district court apparently included some [fees from] services in other litigation ... But the circuit court of appeals excluded them, and we think its action was right. The nature of the other litigation was such that it could neither disturb the prosecution of this suit nor affect the outcome."

283 U.S. at 746, 51 S.Ct. at 642, 75 L.Ed. at 1385.

Drawing on this language, she argues that: "The clear negative inference of this holding is that where the nature of another litigation is such that it could disturb the prosecution of a subsequent suit or affect its outcome, legal services rendered in said other litigation might properly be allowed as attorney's fees in the subsequent suit."

She then argues that the litigation in *In re R. J. M.*, the child in need of aid proceeding, "clearly disturbed the prosecution of this action and clearly affected its outcome" in that the prior action vested custody in her, and had the effect of changing Christopher's original petition from one for custody to one for visitation. We disagree with the proffered negative inference and, in any case, with Barbara's analysis. The child in need of aid proceeding involved a custody dispute, as it regarded R.J.M., between Barbara and the state. The custody proceeding, on the other hand, involved a custody dispute between Barbara and Christopher, and extended to R.J.M., F.J.C., and K.M.C. Barbara's success against the state did not per se preclude Christopher's success in the custody proceeding. In the former, the central issue was whether Barbara was a fit and suitable parent. *See* AS 47.10. In the latter, however, the issue is broader: which parent should have custody in light of the child's best interests. *See* AS 09.-

bara's argument that such an award is "proper and justifiable" on policy grounds.

In making the award of attorney's fees the court is limited to making an award to enable the other spouse to prosecute or defend "the action." *See* AS 09.55.-200(a)(1); Civil Rule 82(a)(1). The phrase "the action" necessarily refers to the case in which the award is made. It plainly does not authorize awards for costs or fees incurred in any other action, such as a child in need of aid proceeding, no matter how closely related the issues might be. Absent such an authorization the award cannot stand. Further, allowing such a carry-over would have the effect of making Christopher liable for Barbara's defense of litigation commenced by the state. Notwithstanding the evidence that the state intended to eventually place R.J.M. with Christopher, the state initiated and prosecuted the action. Given Christopher's limited role in the proceedings,[10] it would be manifestly unjust to hold him liable for Barbara's defense costs and fees. Christopher, at most, can be ordered to pay that amount which was necessary for Barbara to defend in case No. 4970, the continued dissolution and custody action between those two parties. The award of costs and attorney's fees in No. 4970 is vacated and the case is remanded for the superior court to exercise its discretion in determining what award of costs and fees, if any, to make to Barbara[11] for her defense in No. 4970.

AFFIRMED in part, REVERSED in part, and REMANDED.

BURKE and COMPTON, JJ., not participating.

55.205. It is possible that Barbara can be a fit parent yet that a child's *best* interests compel that custody be placed in Christopher. Even if the interrelation between the issues was complete, the award of costs and fees must still rest upon some statute, court rule, or recognized rule of equity, not on inferences from language in an unrelated decision from another jurisdiction.

10. The court did not officially grant Christopher's motion to intervene, although it did allow him to participate in the proceeding. Even so, he did not initiate or prosecute the action.

His participation was limited; he did not testify or offer any witnesses.

11. We reject Christopher's arguments that the denial of fees in the child in need of aid proceeding precludes an award of fees, under theories of the "law of the case," res judicata, or collateral estoppel, in a dissolution action. The two actions are distinct and, further, as we have ruled today, fees are unavailable as a matter of law in the former but statutorily authorized in the latter. Logically, therefore, a denial of fees in the former can in no manner compel the same result in the latter proceeding.