Robert E. SPEIDEL, Appellant,

v.

STATE of Alaska, Appellee.

No. 1014.

Supreme Court of Alaska.

Oct. 21, 1969.

Allen McGrath, Anchorage, for appellant.

Douglas B. Baily, Dist. Atty., Fairbanks, for appellee.

Before DIMOND, RABINOWITZ, BONEY and CONNOR, JJ.

## OPINION

DIMOND, Justice.

Appellant was convicted by a jury of failure to return a rented motor vehicle. From this conviction an appeal has been taken.

The indictment alleged a violation of AS 28.35.026. Appellant moved to dismiss the indictment because the statute failed to provide for proof of criminal intent before conviction. The motion was denied.

At trial it was shown that appellant had rented an automobile from Avis Rent-A-Car Company pursuant to a signed agreement, and had failed to return the automobile at the time stated in the agreement. In regard to the allegation that AS 28.35.026 failed to require proof of criminal intent, the trial judge said:

I find that the statute does require an element of intent as such as to constitute * * * wilfull conduct on the part of the person charged that his indifference must be a conscious indifference * * * whether the wrong is done to the owner. * * *

AS 28.35.026 provides:

(a) A person in possession of a motor vehicle under an agreement in writing which requires him to return the vehicle to a particular place or at a particular time who refuses or wilfully neglects to return it to the place and at the time specified in the agreement in writing, or who secretes, converts, sells or attempts to sell the vehicle or any part of it is, upon conviction, punishable by imprisonment for not more than five years, or by a fine of not more than $1,000, or by both.

(b) As used in this section, "wilfully neglects" means omits, fails, or forbears, with a conscious purpose to injure, or without regard for the rights of the owner, or with indifference whether a wrong is done the owner or not.

Appellant asserts that the trial court's interpretation of AS 28.35.026 is incorrect. He states that failure to return a rented automobile under the statute is a felony and requires proof of criminal intent for conviction. He argues that AS 28.35.026 has no criminal intent requirement and is, therefore, invalid.

It is said to be a universal rule that an injury can amount to a crime only when inflicted by intention—that conduct cannot be criminal unless it is shown that one charged with criminal conduct had an awareness or consciousness of some wrongdoing.[1]

But this rule is not without exception. During the past century there has been an ever increasing tendency to impose new duties with criminal sanctions which disregard any ingredient of intent. This has been caused primarily by the industrial revolution, out of which grew the necessity of imposing more stringent duties on those connected with particular industries, trades, properties, or activities that affect public health, safety or welfare. As the United States Supreme Court pointed out in Morissette v. United States:

This has confronted the courts with a multitude of prosecutions, based on statutes or administrative regulations, for what have been aptly called "public welfare offenses." These cases do not fit neatly into any of such accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals. Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize. While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the effi-

1. Morissette v. United States, 342 U.S. 246, 250, 72 S.Ct. 240, 96 L.Ed. 288, 293 (1952).

ciency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, the legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities.[2]

The statute under consideration here, however, does not represent what could be classified as a "public welfare offense." The health, safety and welfare of the public is not involved. All that the statute is concerned with is the protection of one select group of persons in the business community—those who rent automobiles.

Moreover, as was indicated in *Morissette*, penalties for public welfare offenses "commonly are relatively small, and conviction does no grave damage to an offender's reputation."[3] That is not true here. The penalty is not small—the offender under AS 28.35.026 is subject to conviction of a felony and imprisonment for a term of five years.[4] This would do considerable damage to one's reputation. The basis for dispensing with the requirement of criminal intent with respect to "public welfare" types of offenses has no application in this case.

It is true that one will sometimes find felony statutes that are silent on the sub-

ject of criminal intent. But these are instances where the states have codified the common law of crimes, and their courts have assumed that the omission of the requirement of criminal intent did not signify disapproval of the principle but merely recognized that intent was so inherent in the idea of the offense that it needed no statutory affirmation. Thus, as to felony-type offenses codified from the common law, the courts have found an implication of intent.[5] Representative of these instances are larceny-type offenses where the state courts have consistently retained a requirement of criminal intent.[6]

But the statute under consideration is not of that type. It is not silent as to the mental elements of the acts made criminal, so as to give rise to the inference that criminal intent is inherent in the idea of the offense denounced. A person is guilty of a crime under AS 28.35.026 if he "willfully neglects" to return a motor vehicle to the owner. The term "willfully neglects" is defined as meaning—

> omits, fails, or forbears, with a conscious purpose to injure, or without regard for the rights of the owner, or with indifference whether a wrong is done the owner or not.

By defining "willfully neglects" so specifically, the legislature has indicated that the ordinary criminal or felonious intent, as in the case of larceny (the intent to deprive the owner permanently of the property taken[7]), is not inherent in the offense of failing to return a rented automobile. In place of inherent criminal intent the legislature has substituted something else. The

2. *Id.* at 255–256, 72 S.Ct. at 246, 96 L.Ed. at 296–297.

3. *Id.* at 256, 72 S.Ct. at 246, 96 L.Ed. at 297.

4. AS 28.35.026(a) *provides*:
   A person in possession of a motor vecle under an agreement in writing which requires him to return the vehicle to a particular place or at a particular time who refuses or wilfully neglects to return it to the place and at the time specified in the agreement in writing, or who secretes, converts,

   sells or attempts to sell the vehicle or any part of it is, upon conviction, punishable by imprisonment for not more than five years, or by a fine of not more than $1,000, or by both.

5. Morissette v. United States, 342 U.S. 246, 252, 72 S.Ct. 240, 96 L.Ed. 288, 294 (1952).

6. *Id.* at 260–262, 72 S.Ct. 240, 96 L.Ed. at 299.

7. 2 Wharton's Criminal Law and Procedure § 452, at 80 (1957).

question is whether this substitution meets the conventional requirement for criminal conduct in this kind of case, i. e., the infliction of injury on the owner of a vehicle by intention, with awareness of some wrongdoing.

By one of the definitions of "willfully neglects" the statute makes it a criminal offense to fail to return a motor vehicle "with conscious purpose to injure." [8] Here the statute incorporates an element of conscious wrongdoing or criminal intent. To that extent the statutory offense meets the conventional requirement of criminal conduct.

But that is not so as to the other definitions which make it a crime to fail to return a motor vehicle "without regard for the rights of the owner" or "with indifference whether a wrong is done the owner or not." [9] Under this terminology it is possible for one to be found guilty of the offense when there was an entire lack of any conscious deprivation of property or intentional injury. If one fails to return an automobile out of neglect, without any intention to deprive the owner of his property or to convert the property to his own use, or of doing wrong to the owner, he is made guilty of a felony although he may have acted unwittingly or inadvertently or negligently. This is contrary to the general conditions of penal liability requiring not only the doing of some act by the person to be held liable, but also the existence of a guilty mind during the commission of the act.

Although an act may have been objectively wrongful, the mind and will of the doer of the act may have been innocent. In such a case the person cannot be punished for a crime, unless it is one such as the "public welfare" type of offense, which we have discussed, where the penalties are relatively small and conviction does no great damage to an offender's reputation. Under the terms of AS 28.35.026 there is no escape from a felony conviction and a possible five-year prison term for simple neglectful or negligent failure to return a rented automobile at the time specified in the rental agreement. To make such an act, without consciousnes of wrongdoing or intention to inflict injury, a serious crime, and criminals of those who fall within its interdiction, is inconsistent with the general law. To convict a person of a felony for such an act, without proving criminal intent, is to deprive such person of due process of law. To the extent that AS 28.35.026 permits that to happen, it is invalid and of no effect.[10]

However, the statute is invalid and ineffective only to the extent mentioned, and not in its entirety. It is severable by virtue of AS 01.10.030 which provides:

Any law heretofore or hereafter enacted by the Alaska legislature which lacks a severability clause shall be construed as though it contained the clause in the following language, "If any provision of this Act, or the application thereof to any person or circumstances is held invalid, the remainder of this Act and the application to other persons or circumstances shall not be affected thereby."

What this statute means, as applied in this case, is that AS 28.35.026 is valid and may be utilized to impose criminal responsibility on one to the extent that he fails to return a motor vehicle "with con-

---

8. AS 28.35.026(b).

9. *Id.*

10. *Cf.* AS 28.35.025(a), which also deals with rental vehicles, where criminal intent is stated as a requirement for criminal liability. That statute provides:
A person who, with intent to defraud, obtains possession of a motor vehicle from its owner or a person who has possession of the vehicle with the owner's consent, by agreeing in writing to pay a rental for use of the vehicle based in whole or in part on the length of time and distance the vehicle is driven, upon conviction, is punishable by imprisonment for not more than five years, or by a fine of not more than $1,000, or by both.
AS 28.35.025 and 28.35.026 were parts of one enactment by the legislature in chapter 37, SLA 1964.

scious purpose to injure" the owner of the vehicle.

This does not mean, however, that appellant's conviction may stand. In Stromberg v. California,[11] the defendant was convicted by a jury under a California statute making it an offense publicly to display a red flag for any one of three purposes. Finding it would be unconstitutional to punish one who displayed the flag for one of the three purposes, the United States Supreme Court rejected the state court's reasoning that the conviction could nevertheless be sustained because the other two statutory purposes were severable and constitutional. The Supreme Court said:

> The verdict against the appellant was a general one. It did not specify the ground upon which it rested. As there were three purposes set forth in the statute, and the jury was instructed that their verdict might be given with respect to any one of them, independently considered, it is impossible to say under which clause of the statute the conviction was obtained. If any one of these clauses, which the state court has held to be separable, was invalid, it cannot be determined upon this record that the appellant was not convicted under that clause. * * * It follows that instead of its being permissible to hold, with the state court, that the verdict could be sustained if any one of the clauses of the statute were found to be valid, the necessary conclusion from the manner in which the case was sent to the jury is that, if any of the clauses in question is invalid under the Federal Constitution, the conviction cannot be upheld.[12]

This rule has been consistently followed by the Supreme Court in later decisions.[13]

We apply the rule in *Stromberg* to this case. The verdict against appellant was a general one and did not specify the ground upon which it rested. In addition, a fair reading of Instruction No. 15 leads us to the conclusion that the jury might have found appellant guilty under any one of the three definitions of "willfully neglects."[14] It is impossible to say

11. 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931).

12. *Id.* at 367–368, 51 S.Ct. at 535, 75 L.Ed. at 1122.

13. Street v. New York, 394 U.S. 576, 585, 89 S.Ct. 1354, 1362, 22 L.Ed.2d 572, 581 (1969); Yates v. United States, 354 U.S. 298, 311, 77 S.Ct. 1064, 1 L.Ed.2d 1356, 1371 (1957); Terminiello v. City of Chicago, 337 U.S. 1, 5–6, 69 S.Ct. 894, 93 L.Ed. 1131, 1135 (1949); Cramer v. United States, 325 U.S. 1, 36 n. 45, 65 S.Ct. 918, 89 L.Ed. 1441, 1461 n. 45 (1945); Williams v. North Carolina, 317 U.S. 287, 292, 63 S.Ct. 207, 87 L.Ed. 279, 282 (1942).

14. Instruction No. 15 reads as follows:
The essential elements which the State must prove to warrant a conviction of the defendant of the crime of Failure to Return a Rental Vehicle, as charged in Count I of the Indictment, are:
1. That the defendant Robert E. Spiedel [sic] was in possession of a 1968 Falcon under an agreement in writing which required him to return that vehicle to Avis Rent a Car on January 18, 1968;
2. That the defendant wilfully neglected to return that vehicle to Avis Rent a Car on January 18, 1968;
3. That the omission, failure or forbearance of defendant to return said vehicle was with a conscious purpose to injure Avis Rent a Car, or without regard for the rights of Avis Rent a Car or with an indifference whether or not a wrong was done to Avis Rent a Car.

If you find from the evidence that the State has proved, beyond a reasonable doubt, each of these essential elements then you should find the defendant guilty as charged in Count I of the Indictment; but if you have a reasonable doubt as to whether all of these essential elements have been proved, then you should find the defendant not guilty.

We believe that the words in the last paragraph, "each of these essential elements" and "all of these essential elements" refer to the three essential elements as listed in numbered paragraphs 1, 2 and 3 of the instruction, and not just to the three alternative bases for conviction in paragraph number 3.

whether the jury convicted because appellant failed to return the motor vehicle "without regard for the rights of the owner" or "with indifference whether a wrong is [was] done the owner or not" or "with conscious purpose to injure" the owner of the vehicle. For this reason the conviction cannot stand and a new trial must be ordered.

Appellant next contends that AS 28.35.026 is unconstitutional because it is vague. He relies upon the doctrine that a criminal statute which "is so vague and standardless as to not give fair warning of the acts prohibited by it is a deprivation of due process of law under the 14th Amendment of the United States Constitution." [15] In Harris v. State we quoted with approval from a decision of the United States Supreme Court in Lanzetta v. New Jersey [16] as follows:

No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.[17]

■ We do not believe that the statute forbids the doing of an act "in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application," [18] or that appellant or anyone else could not reasonably understand whether his contemplated conduct was proscribed. The statute makes criminal the action of one who "willfully neglects" to return a motor vehicle.[19] Under our decision as to the validity of the statute as it pertains to criminal intent, "willfully neglects" means the failure to return a motor vehicle "with conscious purpose to injure" the owner of the vehicle. One does not have to guess as to whether or not he has a conscious purpose to inflict injury on someone else. He either has such purpose and an awareness of it, or he does not. If he does, he will know from the terms of the statute that he can be found guilty of a criminal offense. He is given fair warning of the kind of act proscribed by the statute. The statute is not vague.

Appellant had signed a rental contract with Avis Rent-A-Car Company which provided in part:

[T]he Renter acknowledges and agrees:

1. That Renter will return said vehicle, together with all tires, tools, accessories and equipment, to an Avis station in the city where the vehicle was rented * * * and on the date specified on page 2, or sooner, upon demand of Lessor.

* * * * * *

3. That Renter expressly acknowledges personal liability to pay lessor on demand: (a) a mileage charge computed at the rate specified for the mileage covered by said vehicle during the term of this rental * * *; (b) time, collision damage waiver and, miscellaneous charges at the rate specified on page 2 of this rental. * * *

Appellant failed to return the automobile and pay rental fees as provided in the contract. He contends that since all he had done was fail to meet an obligation, for service or money, created by contract, his conviction and sentence of imprisonment under AS 28.35.026 violated the constitutional prohibition against imprisonment for debt.[20]

15. Harris v. State, 457 P.2d 638, 640–641 (Alaska 1969).

16. 306 U.S. 451, 452, 59 S.Ct. 618, 83 L.Ed. 888 (1939).

17. Harris v. State, supra n. 15.

18. Connally v. General Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926).

19. AS 28.35.026 makes criminal the action of one who "refuses" to return a motor vehicle. Since appellant was not charged with refusal to return the automobile in question, but with neglecting to return it, we have not discussed the issue of criminal responsibility for refusal to return a motor vehicle as it related to criminal intent.

20. Article I, section 17 of the Alaska constitution provides:

There shall be no imprisonment for debt. This section does not prohibit civil arrest of absconding debtors.

■ The crux of the problem is the meaning of "debt" as used in the constitution. Appellant argues that it means "all that is due a man under any form of obligation or promise." [21] This seems to be a minority position. Most courts define "debt" as "any liability to pay *money* growing out of any contract, either express or implied." [22] [Emphasis added.] The gist of the offense under the statute is failure to return an automobile with a conscious purpose to injure the owner and not mere failure to pay the rental price. [23] We hold that the constitutional prohibition against imprisonment for debt has not been violated. [24]

After conviction but prior to the imposition of sentence, a conference was held in the trial judge's chambers. Present were the trial judge, the district attorney, a probation officer and appellant's counsel. Appellant was not present. There is no record of what took place at this conference. In his brief on this appeal counsel for appellant, who was also trial counsel, stated that at the conference the facts upon which appellant's sentence was to be based were presented to the conferees for discussion, and that such facts emanated mostly from a presentence report that had been prepared by the probation officer. This statement has not been denied by appellee, so we shall assume it is correct.

Appellant contends here, as he did prior to sentencing in the trial court, that he was entitled to be present at the conference, and that his absence was a violation of Criminal Rule 38 which provides:

The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules.

In interpreting this rule we have said:

[N]onadherence by the trial court to the provisions of Crim.R. 38 does not automatically constitute reversible error. A violation of the mandate of Crim.R. 38 is not prejudicial error unless such nonadherence has affected a substantial right of the defendant. [25]

The question here is whether appellant had a right to be present at the presentence conference and whether his absence affected any substantial right of appellant.

In holding that appellant had no right to be present, the trial judge said: " * * * this man had been convicted, this is not a matter of conviction, this is a matter of attempting to properly evaluate the case for sentence." But that is the very point involved in appellant's claim that he had the right to be present. We know of no person more vitally concerned and interested in a proper evaluation of the case for sentence and the proper sentence to be imposed than the appellant. As interested as the judge, the district attorney and appellant's counsel would be in these matters, the appellant is far more interested because it is his life and liberty, and not *theirs, that the sentence would directly affect*.

The judge also said that the effectiveness of the presentence conference would be diminished if appellant were present.

21. Bronson v. Syverson, 88 Wash. 264, 152 P. 1039, 1044, L.R.A.1916B, 993 (1915).

22. Ex parte Morse, 26 Ariz. 450, 226 P. 537, 539 (1924); Elkay Steel Co. v. Collins, 392 Pa. 441, 141 A.2d 212, 217 (1958); Clausen v. Clausen, 250 Minn. 293, 84 N.W.2d 675, 681 (1957); Ex parte Small, 92 Okl.Cr. 101, 221 P.2d 669, 679 (Ct.App.1950); Davis v. State, 237 Ala. 143, 185 So. 774, 776 (Ala.1938).

23. *See* Plapinger v. State, 217 Ga. 11, 120 S.E.2d 609, 611 (1961); Treffry v. Taylor, 67 Wash.2d 487, 408 P.2d 269, 273-274 (1965); Ennis v. State, 95 So. 2d 20, 23 (Fla.1957); Application of Windle, 179 Kan. 239, 294 P.2d 213, 215 (1956).

24. People v. Carr, 229 Cal.App.2d 74, 40 Cal.Rptr. 58 (1964).

25. Noffke v. State, 422 P.2d 102, 105 (Alaska 1967); Kugzruk v. State, 436 P.2d 962, 964 (Alaska 1968).

In what way this would be so the judge did not explain, nor do we understand. The presentence report prepared by the probation officer probably formed the basis for the discussion at the conference. That report may have contained hearsay matter concerning appellant's background and behavior. To afford the appellant the right to hear what was said about him and the opportunity to deny or explain or state mitigating circumstances would, we believe, tend to enhance rather than diminish the effectiveness of the presentence conference.

■ As we have stated, there is no transcript of what took place at the presentence conference. We believe it is fair to assume that the parties present discussed appellant's background and character, his behavior, his reputation, his chances of rehabilitation, and the possibility of granting probation.[26] The matters discussed probably had a large influence on the judge's ultimate decision as to what sentence to impose. In all fairness to the appellant—he being the one who was to be sentenced—the opportunity should have been given him to participate in the discussion. Under Criminal Rule 38 appellant had the express right to be present "at the imposition of sentence." We hold that the term "imposition of sentence" encompasses the proceedings known as the "presentence conference," since those proceedings have such a direct effect on the sentence that is ultimately imposed.[27]

■ The right of appellant to have been present at the presentence conference was a substantial one. The denial of that right must be assumed to have been prejudicial, since we cannot say with any degree of certainty that the judge may not have been influenced to impose a lesser sentence had appellant been given the opportunity to be heard and participate in the discussion relating to sentencing.[28] By our decision today we do not mean to bar meetings between court and counsel concerning procedural matters, scheduling problems, and similar topics which may take place before, during, or following a criminal jury trial. There are many instances in which conferences between court and counsel in chambers do not directly affect or dispose of the substantial merits of a defendant's cause or the sentence to be imposed. But the conference which took place in the case before us did have a direct effect upon the sentence received by the defendant.

The judgment is reversed and the case is remanded for a new trial.

NESBETT, C. J., did not participate in the decision of this case.

26. *See Crim.R. 32(c) which provides:*
    Pre-Sentence Investigation.
      (1) *When Made.* The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless the court otherwise directs. The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or has been found guilty.
      (2) *Report.* The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition, and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court.

27. We do not pass upon the question of whether or not a defendant in a criminal case has a constitutional right to be present at a presentence conference.

28. It might be argued that appellant can show no prejudice because he was placed on probation for five years and, subject to the conditions of probation, was not obliged to serve any prison time. Such an argument would have to ignore the possibility that had appellant been present at the presentence conference, his sentence might have been less than five years, and that if appellant violates the terms of probation he will be required to be imprisoned.