**KODIAK WESTERN ALASKA AIRLINES, INC., Appellant**

v.

**BOB HARRIS FLYING SERVICE, INC., Appellee.**

**BOB HARRIS FLYING SERVICE, INC., Appellant,**

v.

**KODIAK WESTERN ALASKA AIRLINES, INC., and Alaska Transportation Commission, Appellee.**

Nos. 3641, 3759.

Supreme Court of Alaska.

March 30, 1979.

John M. Stern, Jr., Anchorage, for Kodiak Western.

John B. Patterson, Anchorage, for Bob Harris.

Douglas A. Hebbel, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for Alaska Transp. Commission.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

CONNOR, Justice.

This appeal concerns the superior court's reversal of an Alaska Transportation Commission ruling that Harris Flying Service had violated the Air Commerce Act by charging individual passenger fares while providing regular service.

Kodiak Western Alaska Airlines, Inc. (hereinafter "Kodiak Western") complained to the Alaska Transportation Commission alleging that Bob Harris Flying Service, Inc. (hereinafter "Harris") was violating sections of the Alaska Air Commerce Act, AS 02.05. The Commission found that Harris had violated AS 02.05.050(d)(3)[1] by: (1) carrying passengers on an individual fare basis between points served on a "regular" basis, specifically Dillingham and Togiak, and (2) charging individual passenger fares less than those charged by Kodiak Western, the scheduled air carrier between those points.

The Commission found the gross revenue obtained from these "illegal" operations to

---

1. AS 02.05.050 states in relevant part:

   "(d) Air taxi operators. The commission, by regulation, may establish more than one subclassification of air taxi operator and shall establish the extent to which a subclassification shall be regulated under the provisions of this chapter. A person authorized under this chapter to engage in air commerce as an air taxi operator

   . . . . .

   (3) may charge individual passenger fares and per pound cargo rates on bush routes or points served by him on an irregular basis; however, no individual passenger fare and per pound cargo rate may be less than that contained in the published tariff or of a scheduled carrier between points being served by the carrier . . . ."

be approximately $25,600 realized from 128 separate days of operation and, because of the substantial and continuous nature of the violations, deemed the maximum civil penalty of $150 per day appropriate. Thereupon the Commission levied a $19,200 penalty against Harris, suspending $10,000 for one year, then to be dismissed, provided that Harris cease its violative practices and commit no further violations.

On appeal, the superior court found the evidence insufficient to support the Commission's finding that Harris had provided "regular" service. Although the court found substantial evidence to uphold the finding of a tariff violation, it concluded that the penalization was "fundamentally unfair." The case was remanded to the Commission for entry of a new order and vacation of the penalty.

Kodiak Western has appealed. As the prevailing party, Harris was awarded costs against Kodiak Western with the Commission being exempted from liability. No attorney's fees were awarded and Harris has cross-appealed on that issue.[2]

█ The Alaska Air Commerce Act permits an air taxi operator to charge individual passenger fares "on bush routes or points served by him on an irregular basis." AS 02.05.050(d)(3). The controversy in the instant case is whether the service between Dillingham and Togiak provided by Harris was "regular" or "irregular." No regulations clarifying the meaning of "irregular" in the statute have been promulgated.

Appellant Kodiak Western maintains that Harris operated a consistent pattern of frequent flights between Dillingham and Togiak which constituted "regular" service. The evidence on this matter includes a listing by date of all Harris' flights between these points for the period January 1, 1975, through July 15, 1975. The listing shows that during the six and one-half month period covered by the complaint, Harris made 483 trips between Dillingham and Togiak, operating on 128 out of the 196 days. The frequency of the flights ranged from 33 to 115 per month, with as many as eleven on one day (May 1), and periods of up to eight consecutive days with no flights (March 9–16).

At the hearing Kodiak Western's chief Dillingham pilot testified that in the course of his ordinary affairs at the Dillingham airport he noticed that Harris operated a regular daily morning flight between Dillingham and Togiak, but he did not observe a consistent afternoon flight pattern. In contradictory testimony, Harris' president denied operating a regular 9:00 a. m. flight and stated that he never leaves the ground unless there is freight to be hauled or a personal "request to either go pick up traffic or take traffic." Regarding this point Harris argues that it must go whenever there is a request because AS 02.05.150 mandates that it provide service "upon reasonable request."[3]

Although it is clear that Harris made numerous trips between Dillingham and

2. The Alaska Transportation Commission is involved only as an appellee in Harris' cross-appeal for attorney's fees.

3. AS 02.05.150 states in relevant part:
"Rates and Service. (a) Duties of certificated carriers. Every certificated carrier and every carrier exempt under § 50(b) of this chapter has the following duties:
(1) to provide air commerce, as authorized by its certificate, upon reasonable request and to provide reasonable through service in air commerce in connection with other carriers or with common carriers by railroad, motor vehicle, express or water;
(2) to provide adequate and reasonable service, equipment, and facilities, in connection with air commerce;

(3) to establish, observe and enforce just and reasonable individual and joint rates, fares, and charges, and just and reasonable classifications, rules, regulations, and practices relating to air commerce.
(b) Discrimination. No certificated carrier or carrier exempt under § 50(b) of this chapter may make, give, or cause an undue or unreasonable preference or advantage to a particular person, port, locality, or description of traffic or subject a particular person, port, locality, or description of traffic to any unjust discrimination or an undue or unreasonable prejudice or disadvantage."

Togiak, we are not convinced that any hourly, daily, or weekly pattern of "regular" service was established.

Additionally, consideration must be given to the integral and essential part that air taxi services play in rural Alaskan life. Air taxis often provide the only means of transportation between isolated communities and villages. Therefore the limitation allowing per passenger fares only on bush routes or points served irregularly [4] must be read together with the mandate to provide service upon reasonable request.[5] It is clear that an air taxi operating "upon reasonable request" cannot control the frequency of its flights between specific points.

■ The Commission determined that Harris was conducting "regular," not "casual,"[6] operations between Dillingham and Togiak in violation of AS 02.05.050(d)(3). Since we find that the Commission's decision was based on evidence which shows an "irregular" pattern of "service on reasonable request," we cannot agree with its conclusion. The superior court was correct in holding that the evidence was insufficient to support the Commission's findings of fact[7] and that, therefore, the Commission's legal conclusions could not be upheld.[8]

The second issue raised by this appeal concerns Harris' tariff violation. AS 02.05.050(d)(3) provides in part that where indi-vidual passenger fares are allowable an air taxi's rate cannot be "less than that contained in the published tariff of a scheduled carrier." It is clear from the record that Harris violated this provision. However, the question remains whether Harris should be fined for charging its filed tariff rate. Although Harris violated AS 02.05.050(d)(3) by using a fare less than Kodiak Western's, Harris' tariff had been properly filed and accepted by the Commission, and would otherwise have been the "legal" rate which Harris was then authorized to charge.

Kodiak Western contends that acceptance of a filed tariff is not the equivalent of approval and that a filed tariff is not necessarily lawful. It argues that it was Harris' duty, as an air taxi operator, to ascertain the scheduled carrier's published tariff rate and to then file a proper tariff. It also maintains that the assessment of a civil penalty against Harris is a proper, albeit indirect, exercise of the Commission's enforcement responsibility. Thus, Kodiak Western's position is that Harris violated the Act and should be penalized.

Harris argues that the Commission is in the best position to determine whether the tariffs filed are lawful, that the Air Commerce Act requires the Commission to perform this duty, and that the Commission's acquiescence exonerates the violation.

4. See AS 02.05.050(d)(3), *supra* note 1.

5. See AS 02.05.150, *supra* note 3.

6. Both the Commission and Kodiak Western have repeatedly contended that "irregular" was clearly interpreted as "casual" in Southeast Skyways, Inc., ATC Docket No. 73–320–AT/C, Order No. 74–362, at 9, dated July 16, 1964, where the ATC said:

"Also we note that the Air Commerce Act of 1960, as amended, authorizes air scheduled carriers to operate on a regular basis, aircraft available for use by the public whereby the remuneration collected for transportation of each passenger or shipper is based on that portion of the capacity of the aircraft utilized by said passenger or shipper while the collection of revenue in this manner by air taxi operators is specifically restricted to operations of this type conducted on a *casual* basis only (*cf.* AS 02.05.050(d)(3))." [Emphasis added.]

7. We use the "reasonable basis" standard of review for questions involving agency expertise or fundamental policy considerations. Under this standard deference will be given to the agency's determination so long as it is reasonable, supported by the evidence in the record as a whole, and there is no abuse of discretion. *Union Oil Co. v. Dep't of Revenue*, 560 P.2d 21, 23 (Alaska 1977); *Mobil Oil Corp. v. Local Boundary Comm.*, 518 P.2d 92, 97–8 (Alaska 1974); *Swindel v. Kelly*, 499 P.2d 291, 298–99 (Alaska 1972); *Kelly v. Zamarello*, 486 P.2d 906, 916–17 (Alaska 1971). In the instant case we agree with the superior court that the agency's decision was not supported by the evidence presented.

8. Because we find the insufficiency of the evidence dispositive we do not reach appellee's claim of unconstitutional vagueness.

Harris also insists that any relief allowed should be prospective only, and that it should not be penalized for filing and observing a tariff which contained fares less than Kodiak Western's, because no reasonable person would intentionally file a tariff whereby either compliance or non-compliance made him violate the law.

■ The applicable statutes do not state expressly what should happen in a situation of this kind. AS 02.05.140(c) does state:

"Rejection of tariffs. The commission may reject any tariff which is not consistent with this section and the regulations of the commission. A tariff so rejected is void."

This provision does not place upon the Commission an affirmative duty to review and disapprove tariffs which are improper. But it certainly is empowered to do so. Moreover, AS 02.05.150(c) states:

"If, after notice and opportunity for hearing, upon complaint or upon its own initiative, the commission is of the opinion that any . . . rate . . . is or will be unjust or unreasonable, unjustly discriminatory, unduly preferential or unduly prejudicial, the commission shall determine and prescribe the lawful rate, fare or charge which the carrier may thereafter demand, charge, collect or receive . . ."

■ Where, as here, there is no evidence that the carrier knew that its filed and accepted tariff was unlawful, the question is whether the Commission can penalize a carrier for charges collected by it before it was notified that its tariffs were in question. We think not. The Commission can act prospectively, but we find no statutory authority for the Commission to impose a penalty as to tariffs which have been filed and accepted, and as to which the carrier has not received notice that its tariff is considered legally questionable. This assumes, of course, that there is no evidence of bad faith or intentional misconduct on the part of the carrier. We are persuaded that the superior court did not err in vacating the penalty for the tariff violation.[9] Prior to the instant action Harris had no notification that the tariff was violative of the act. Nor was a "cease and desist" order issued. Under these circumstances we are convinced that the severe penalty imposed by the Commission should not be reinstated.

■ Harris has cross-appealed from the superior court's denial of attorney's fees. It is important to observe that this was an appeal to the superior court from the determination of an administrative agency. Thus it was brought pursuant to Appellate Rule 45, and it was not an action brought under the Civil Rules. In such an appeal we believe that Civil Rule 82, which governs attorney's fees in civil cases, has no application. The rule which, by analogy, is most nearly applicable is Appellate Rule 29(d).[10]

9. We express no opinion on the collateral consequences of having filed an improper tariff, i. e., on the question of what liabilities might arise to others by reason of having filed an improper tariff.

10. Appellate Rule 29 states in full:
 Rule 29. Costs.
 (a) *Dismissal or Denial.* If an appeal is dismissed or petition denied by this court, costs shall not be allowed to the appellee or respondent, unless otherwise ordered by the court.
 (b) *Affirmance of Judgment.* In all cases of affirmance of a judgment or any order or decision of the superior court, costs shall be allowed to the appellee or respondent unless otherwise ordered by the court.
 (c) *Reversal of Judgment or Order.* In cases of reversal by this court of any judgment, order or decision of the superior court, costs shall be allowed the appellant or petitioner, including the costs of preparation of the record and of the reproduction of briefs, petitions and memoranda, unless otherwise ordered by the court.
 (d) *Attorney's Fees.* Where costs are allowed in this court, attorney's fees may also be allowed in an amount to be determined by the court. If the court determines that an appeal or cross-appeal is frivolous or that it has been brought simply for purposes of delay, actual attorney's fees may be awarded to the appellee or cross-appellee.
 (e) *Procedure Where Allowed.* Where costs are allowed in this court, the clerk shall insert the amount thereof in the body of this mandate or other process sent to the court below, and annex to the same the bill of items taxed in detail.

Under that rule the court has discretion to award attorney's fees or not to award them.

■ Our review of this case reveals that the superior court correctly employed its discretion in not awarding attorney fees to Harris. It cannot be said that any party to the appeal emerged with a clear victory, and even in such an instance there would be no need to award fees as a matter of course. It follows that the superior court did not err in refusing an award to Harris.

AFFIRMED.

BOOCHEVER, Chief Justice, concurring and partially dissenting.

While I agree with the majority's treatment of the issue of attorney's fees, I dissent from the remainder of the majority opinion. I differ with the majority's reaching the issue of whether Harris was providing "regular" service. It seems to me that in dealing with the constitutional void for vagueness challenge to the statute, the majority opinion places the cart before the horse. When a party challenges a statute as being unconstitutionally vague, it must first be examined "on its face." *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32, 83 S.Ct. 594, 597, 9 L.Ed.2d 561, 565 (1963). Although historical application of the statute may be examined in connection with the vagueness inquiry, *id.*, a statute must first survive the *facial* challenge before the court proceeds to examine whether the particular conduct of the party before the court falls within or without the statute. The majority opinion reverses the

order of inquiry. It first concludes that Harris' activity does not fall within the terms of the statute (*i. e.*, that he has not provided "regular" service). In Footnote 8 (Page 1203), the majority then concludes that the vagueness issue need not be reached. This is a non-sequitur. If a statute's operative term—here, "regular"—is challenged as being vague, the term must first be defined before one can face the issue of whether or not the evidence is insufficient to bring a party's conduct within the operation of the statute.

I would not pass on the issue of whether or not Harris was providing "regular" services. Depending on the definition of "regular" and "irregular" services, a close question would be presented by the facts of this case. The Commission has failed to define the terms "regular" and "irregular" services; and, in my opinion, in the absence of such definitions more adequately informing air taxi operators and others of the requirements, the statute is void for vagueness.[1]

I also differ from the court's decision pertaining to the penalty for charging an unlawful tariff. It was undisputed that Harris violated AS 02.05.050(d)(3) by charging a lower fare than Kodiak Western. Under AS 02.05.231, the Commission may levy a civil penalty upon a person who violates a provision of Chapter 5.[2] Normally, a mens rea is not required for the violation of a regulatory provision such as those specified in the Alaska Air Commerce Act of 1960 (Chapter 5).[3] AS 02.05.230 provides that

---

1. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227 (1972); *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926). *See Stock v. State*, 526 P.2d 3, 7 (Alaska 1974); *Marks v. City of Anchorage*, 500 P.2d 644, 646 (Alaska 1972).

2. AS 02.05.231 specifies:

    *Civil penalties for violation.* The commission may, after notice and opportunity for a hearing, levy a civil penalty of not more than $150 for each offense upon a person who violates or who procures, aids, or abets, a violation by an air carrier of a provision of this chapter, or an order, decision, rule or regulation of the commission. A levy of pen-

alty shall be made by written order of the commission.

3. R. Perkins, Criminal Law 785 (2d ed. 1969). Such offenses have been recognized in Alaska under the label of "public welfare" offenses. *See Speidel v. State*, 460 P.2d 77, 80 (Alaska 1969), where the court stated:

    Although an act may have been objectively wrongful, the mind and will of the doer of the act may have been innocent. In such a case the person cannot be punished for a crime, unless it is one such as the "public welfare" type of offense, which we have discussed, where the penalties are relatively small and conviction does no great damage to an offender's reputation.

knowingly violating the Air Commerce Act is a misdemeanor. The civil penalty provision, AS 02.05.231, contains no requirement of knowledge, and proof of the violator's state of mind normally should not be necessary to impose a civil penalty.[4]

Where, however, a tariff has been filed with the Commission, I agree that, normally, if the carrier does not have knowledge of the facts constituting a violation of the statute, the Commission should not penalize it for charges collected before the carrier is notified that its tariff provision is invalid. I think, however, that a question of fact was presented as to whether Harris knowingly charged a lower fare than Kodiak Western in violation of AS 02.05.050(d)(3). If he knowingly violated the statute, the Commission could impose an appropriate civil penalty. I believe that a factual issue was presented under which the Commission should have ascertained whether or not there was a knowing violation of the statutory provision. No such finding was made by the Commission. In a small community such as Dillingham, there certainly would be the basis for an inference that an air taxi operator would know the tariff of his competitor. I would remand to the Commission on this issue.

I have one further comment pertaining to the majority opinion. I agree with its statement as to the importance of air taxi service in many sectors of Alaska. I think, however, that there are countervailing interests pertaining to the maintenance of certificated carriers providing regular services. These carriers are required to service their routes at specified times regardless of whether or not they have paying loads. There would be no reason for furnishing such services if scheduled carriers are subject to unlimited competition by unscheduled air taxi operators. An incentive has to be furnished for the type of service furnished by scheduled carriers.

4. *See United States v. Dotterweich,* 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943). AS 02.05.230 provides for a penalty of $150.00. If lengthy imprisonment were involved, the re-

BURKE, Justice, concurring.

Like my esteemed colleague, Justice Boochever, I think the statute is unconstitutionally vague and that it is, therefore, unnecessary for this court to pass on the issue of whether there was sufficient evidence to support the Commission's finding that Harris was providing "regular" service.

Otherwise, I concur in the majority opinion.

quirement of criminal intent would be inferred. *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *State v. Guest,* 583 P.2d 836 (Alaska 1978).