**STATE of Alaska, Appellant,**

v.

**Robert Wayne SMITH, D.D.S., Appellee.**

**No. 3797/3893.**

Supreme Court of Alaska.

April 20, 1979.

---

**9.** *See Waters v. State*, 483 P.2d 199 (Alaska 1971).

**10.** *McClain v. State*, 519 P.2d 811, 813 (Alaska 1974).

Bruce M. Botelho, Asst. Atty. Gen., and Avrum M. Gross, Atty. Gen., Juneau, for appellant.

R. Stanley Ditus, Anchorage, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

MATTHEWS, Justice.

The primary issue presented in this case is the validity of an order issued by a hearing officer of the State Department of Commerce and Economic Development which imposed significant conditions on the appellee's right to practice his profession of oral surgery pending the outcome of license revocation proceedings before the State Board of Dental Examiners. We find the provisions of the order prohibiting Dr. Smith from administering general anesthesia and requiring him to maintain detailed patient records to be valid. The other provisions are held invalid as exceeding the statutory authority upon which the order was based. The superior court's order vacating the entire hearing officer's order is therefore reversed. In Part II of this opinion we address the issue of attorney fees.

Dr. Robert Wayne Smith was issued an Alaska dental license in 1959. He practiced oral surgery in the state continuously from then until July of 1968, when he was convicted on a plea of *nolo contendere* of two counts of assault stemming from incidents in which he improperly administered anesthesia, allegedly leading to the death of two patients. He received a suspended sentence of six months with five years probation, during which he was not to practice dentistry. His license was held by the court during the probationary period and was returned to him in 1973. In the fall of that year, Dr. Smith attempted to secure a cur-

rent biennial registration certificate from the Division of Occupational Licensing of the Department of Commerce and Economic Development, as is required by statute for the practice of dentistry.[1] The request was refused on the grounds that Dr. Smith no longer held a valid license to practice dentistry in the state. He then brought a mandamus action in superior court and on March 25, 1976, secured a judgment declaring his license valid and requiring the Division of Occupational Licensing to issue him a current registration certificate. No appeal from that judgment was made.

The state subsequently sought to have his license revoked in an administrative proceeding. An accusation for that purpose was filed on April 26, 1976, before the Board of Dental Examiners, which is authorized by statute to issue and revoke dental licenses.[2] Dr. Smith requested a full hearing on the matter, and the hearing commenced on May 4, 1977. In that proceeding a hearing officer for the Board has recommended that Dr. Smith's license be permanently revoked and the Board has accepted that recommendation. This case does not involve that determination.

When it became apparent that the proceedings before the Board would not be quickly concluded, the Commissioner of Commerce and Economic Development, H. Phillip Hubbard, issued a temporary cease and desist order, dated June 9, 1977, which required Dr. Smith to cease the practice of dentistry in Alaska pending the outcome of the hearing before the Board. After failing in an effort to secure injunctive relief from the order in superior court, Dr. Smith on June 24, 1977, requested an immediate hearing from the Department. Commissioner Hubbard designated Richard Block, Director of the Department's Division of Insurance, as hearing officer. The hearing was commenced on July 1, 1977, and on July 18 an order modifying the cease and desist order was issued by Hearing Officer Block. The modified order permitted Dr. Smith to practice dentistry and oral surgery providing that he comply with a number of conditions.[3]

1. AS 08.36.250.

2. AS 08.36.070(5) provides in pertinent part:
   The board shall have, but not by way of limitation, the following powers and duties:
   (5) to hold hearings, revoke, annul, or suspend the license of a person who violates this chapter or the rules and regulations of the board.

3. The order reads in pertinent part:
   27.
   A. The Temporary Cease and Desist Order dated June 9, 1977 shall be modified to conform to this order.
   B. Dr. Smith shall be permitted to practice general dentistry and oral surgery provided he limits his practice in accordance with the terms of this order. Any practice not in conformity with this order is regarded as grossly and willfully negligent and thus a violation of law and Dr. Smith is hereby ordered to cease and desist therefrom.
   C. Dr. Smith shall practice dentistry only in the office of another dentist duly licensed to practice in the State of Alaska and who is actively practicing dentistry in that office.
   D. Dr. Smith shall see patients and perform procedures only during normal posted business hours and only when the other or one of the other dentists is physically present in the office suite. (But not necessarily in the operatory). And when the nurses and dental assistants are physically present in the office suite.
   E. Dr. Smith shall maintain his own patient file on every patient irrespective of the availability of patient files available from referring dentists or physicians or dentists in whose office Dr. Smith practices. Such file shall contain, as a minimum, a patient health history, x-rays of the operative site and a complete record of every patient visit, every procedure performed and every drug, medication, or therapy administered, given, or prescribed.
   F. Dr. Smith shall perform dentistry only on patients specifically referred to Dr. Smith in writing by a dentist or physician licensed to practice and actively practicing in Alaska and shall perform only those procedures for which the patients are specifically referred. The letter of referral shall be included in the patient file and may be in any form, provided it include as a minimum:
   1) It is addressed specifically to Dr. Robert Smith, D.D.S.
   2) Names the specific patient.
   3) Lists the specific procedures.
   4) Acknowledges that the patient is under the continuing care of the referring dentist or physician, and
   5) Be signed by the referring dentist or physician.

Dr. Smith appealed this administrative order to the superior court, which on December 2, 1977, issued an order vacating hearing officer Block's order as well as the temporary cease and desist order originally issued by the commissioner on the grounds that they constituted abuses of administrative discretion. A stay of the ruling pending the outcome of this appeal was denied.

## I

In reviewing the superior court's decision, the initial question is whether the challenged administrative orders were authorized by statute.[4] The sole source of authority advanced in the text of the orders and by counsel is AS 08.01.087(b), which reads in part:

> If it appears to the commissioner that a person has engaged in or is about to engage in an act or practice in violation of a provision of this chapter or a regulation adopted under it, or any of the laws pertaining to or regulations adopted by the boards listed in § 10 of this chapter, he may, if he considers it in the public interest, and after notification to all board members by telephone or telegraph of a proposed order or action unless a majority of the members of the board object within 10 days,

> (1) issue an order directing the person to stop the act or practice; however, reasonable notice of and an opportunity for a hearing must first be given to the person, except that the commissioner may issue a temporary order before a hearing is held; a temporary order remains in effect until a final order affirming, modifying, or reversing the temporary order is issued or until 15 days after the person receives the notice and has not requested a hearing by that time; a temporary order becomes final if the person to whom the notice is addressed does not request a hearing within 15 days after receiving the notice; the commissioner or his designee shall be the hearing officer at the hearing and shall issue a final order within 10 days after the hearing.

■ We have never before considered the extent of the power conferred by AS 08.01.087(b). We note initially that in applying it to the orders in question we need not consider the original cease and desist order separately from the order modifying it, because when the modifying order was issued the original order ceased to have effect to the extent that it exceeded the later order.[5] In considering whether the modified order

G. Dr. Smith shall not administer or prescribe general anesthesia as that term is defined in 12 AAC 28.090 nor shall he administer or prescribe any agent, drug or medication capable of inducing general anesthesia irrespective of the stage of anesthesia actually induced.

H. Dr. Smith shall administer no agent, drug or medication intravenously, intra-arterially or intramuscularly except local anesthetics administered in the proximity of the operative site.

28. This order is effective immediately and shall continue, unless otherwise ordered, until a final order is issued out of the proceeding now pending in the matter of Robert Wayne Smith, D.D.S., before the Board.

4. AS 44.62.570(b) provides:

Inquiry in an appeal [of a final administrative order] extends to the following questions: (1) whether the agency has proceeded without, or in excess of jurisdiction; (2) whether there was a fair hearing; and (3) whether there was a prejudicial abuse of discretion. Abuse of discretion is established if the agency has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.

5. The pertinent statutory language is: "[A] temporary order remains in effect *until* a final order affirming, modifying, or reversing the temporary order is issued or until 15 days after the person receives the notice and has not requested a hearing by that time . . . ." AS 08.01.087(b)(1) (emphasis added).

The state has contended that the superior court committed error when it ruled on the temporary order. Since we reverse the superior court's order on other grounds, we need not reach this issue. We note, however, that an order of the superior court that merely vacated the modified order without ruling on the original order would not have resulted in the original order becoming final. Only if Dr. Smith had failed to request a hearing within fifteen days would that result have occurred. "[A] temporary order becomes final *if* the person to whom it is addressed does not request a hearing within 15 days after receiving the notice . . . ." *Id.* (emphasis added).

exceeded the authority conveyed by the statute, the key words are:

If it appears to the commissioner that a person has engaged in or is about to engage in an act or practice in violation of . . . any of the laws pertaining to or regulations adopted by [the Board of Dental Examiners], he may, if he considers it in the public interest . . .,

(1) issue an order directing the person to stop the act or practice . . .."

■ It seems apparent from this that an order issued pursuant to AS 08.01.087(b) must be limited to directing an individual to stop activities that are otherwise prohibited by the relevant statutes and regulations. It is not sufficient that the order be in the public interest; rather, that is an additional condition which must be met.

At the hearing and on appeal, the state has contended that the laws violated would include AS 08.36.310(2) and (4) which provide:

A license and registration may be revoked, suspended, or annulled, or the licensee may be reprimanded, censured, or disciplined by the board after hearing when he

(2) is convicted of a crime involving moral turpitude;

(4) commits willful or gross malpractice or willful or gross neglect in the practice of dentistry.

The question we must decide is whether the hearing officer's order is limited to directing Dr. Smith to stop acts or practices that violate these two provisions.

The function of AS 08.36.310 is to detail the scope of the power to revoke, annul, or suspend licenses given to the Board of Dental Examiners by AS 08.36.070(5).[6] Under the statute, the Board may, after a hearing, revoke a dentist's license or take other disciplinary action in the event that he conducts himself in a manner described in one of its enumerated provisions.[7] Since the power is discretionary and since the Board may impose penalties less drastic than license revocation, it is clear that the legislature did not intend that it be per se illegal for persons who have committed the listed transgressions to continue to practice dentistry. Therefore the orders cannot be based on a theory that Dr. Smith violates the statutes merely by continuing his practice in an otherwise legal manner.[8]

On the other hand, the specific activities listed in AS 08.36.310 are clearly proscribed, and were the hearing officer's order limited to directing Dr. Smith to stop such activities or activities otherwise prohibited by the relevant statutes and regulations, it would be proper in scope.

■ An examination of the provisions of the order reveals that some of the provisions are limited to forbidding illegal acts and that some of them are not.[9] Since it is possible to elide the excessive portions, it is not necessary that the entire order be vacated. Specifically, we find provisions C, D and F to be unauthorized. There are no statutory or regulatory provisions requiring dentists to conduct their practices in this way, nor do the activities which these provisions seek to prevent constitute willful negligence or gross malpractice. Provision E we uphold because we find that an intentional failure to keep patient files to the extent mandated by that provision would be a breach of the standard of care required of all dentists and would therefore be willful negligence.[10] Sections G and H are upheld since they proscribe conduct that would violate the requirement that a dentist obtain a permit before he is allowed to

---

6. See note 2, supra.

7. The statute lists 28 types of activity, most of which are not criminal in nature. Many of the activities would indicate lack of qualification or capacity to practice dentistry; others constitute what the legislature felt to be unprofessional conduct. AS 08.36.310.

8. This was recognized by Hearing Officer Block, and was the basis for his modification of the temporary cease and desist order.

9. See note 3, supra.

10. See Patrick v. Sedwick, 391 P.2d 453, 457–58 (Alaska 1964).

administer general anesthesia.[11] Dr. Smith has no such permit. The provisions are to be construed to limit conduct that would be illegal for any dentist without a general anesthesia permit.

In contending that the order was properly authorized under AS 08.01.087(b) and AS 08.36.310, the state concedes that the order was not limited to directing Dr. Smith to stop specific illegal activities, assuming that his practice was not in itself illegal. The state does contend that the order was necessary to assure that Dr. Smith would not conduct his practice negligently and that this rendered the order proper in scope. Essentially the argument is that in his future practice Dr. Smith will inevitably and frequently commit gross negligence. Therefore the commissioner can enforce an AS 08.01.087(b) order which prevents negligence by the expedient of preventing him from practicing, or by preventing him from practicing except under stringent limitations.

The language of the statute does not suggest that such an enforcement power exists. It authorizes the prohibition of specific illegal acts which are likely to occur in the future. The practice of dentistry by Dr. Smith is not an illegal act nor is the solo practice of dentistry on a non-referral basis. Since AS 08.01.087 is very specific as to the scope of a cease and desist order issued by the commissioner, we think it would plainly be improper to hold that there is a broader power implied. This is especially true since other statutes pertaining to the regulation of the dental profession authorize the Board of Dental Examiners, not the commissioner, to revoke or suspend the license of a dentist,[12] to impose conditions under which he or she may practice,[13] and they define in comprehensive detail the grounds for such actions.[14]

The superior court's order is reversed, and the order of the hearing officer shall be reinstated to the extent consistent herewith.

## II

◼ The state also appeals from the superior court's order awarding Dr. Smith the amount of $3,500 in compensation for the attorney fees he incurred in opposing the administrative order "from inception through appeal." We agree with the state that there is no statutory authority granting the judicial branch of government jurisdiction to award attorney fees in compensation for costs incurred in litigation before administrative agencies.

We have recently held that Appellate Rule 29(d)[15] governs the award of attorney fees when administrative agency rulings are appealed to the superior court.[16] This rule was promulgated under authority conferred upon the Supreme Court of Alaska by article IV, section 15 of the state constitution, which provides:

> The supreme court shall make and promulgate rules governing the administration of all courts. It shall make and promulgate rules governing practice and procedure in civil and criminal cases in all courts. These rules may be changed by the legislature by two-thirds vote of the members elected to each house.

The authority granted is limited to the promulgation of rules for the administration of the state judiciary. In light of the doctrine of separation of powers implicit in our state

---

**11.** The regulations concerning permits for the application of general anesthetic agents are found at 12 AAC 28.010–28.090.

**12.** AS 08.36.070(5); AS 08.36.310; AS 08.36.-320.

**13.** AS 08.36.325.

**14.** AS 08.36.310(1)–(28).

**15.** Appellate Rule 29(d) provides:

*Attorney's Fees.* Where costs are allowed in this court, attorney's fees may also be allowed in an amount to be determined by the court. If the court determines that an appeal or cross-appeal is frivolous or that it has been brought simply for purposes of delay, actual attorney's fees may be awarded to the appellee or cross-appellee.

**16.** *Kodiak Western Alaska Airline v. Harris,* 592 P.2d 1200 (Alaska 1979).

constitution,[17] we cannot imply a judicial power to award compensation for costs incurred in administrative proceedings. The superior court's order awarding Dr. Smith attorney fees for legal expenses incurred in opposing the administrative order "from inception through appeal" is therefore vacated. The question of what attorney fees, if any, shall be awarded Dr. Smith for the proceedings in the superior court, is remanded to the superior court.

**REVERSED IN PART; VACATED IN PART; AND REMANDED.**

BOOCHEVER, C. J., dissents.

BOOCHEVER, Chief Justice, dissenting.

I believe that the challenged order comes well within the scope of the statutory authorization. AS 08.01.087(b) specifies in part:

> If it appears to the commissioner that a person has engaged in or is about to engage in an act or practice in violation of a provision of this chapter or a regulation adopted under it . . . he may
>
> (1) issue an order directing the person to stop the act or practice . . .

The commissioner had every reason to conclude that Dr. Smith had engaged in acts or practices in violation of relevant statutes and regulations. The evidence was clear that he had violated AS 08.36.310(2) and (4) which provide:

> A license and registration may be revoked, suspended, or annulled, or the licensee may be reprimanded, censured, or disciplined by the board after hearing when he . . .
>
> (2) is convicted of a crime involving moral turpitude . . .

> (4) commits willful or gross malpractice or willful or gross neglect in the practice of dentistry . . ..

Dr. Smith was convicted of the crime of assault arising out of the deaths of two of his patients. It appeared to the commissioner that Dr. Smith had committed gross malpractice and showed gross neglect in the practice of dentistry. The commissioner was thus authorized to issue an order directing Dr. Smith to stop the act or practice.

The shocking lack of judgment exhibited by Dr. Smith in admittedly causing two deaths and having at least two other deaths which may have been caused by his gross negligence places his judgment as a dentist so much in question that the commissioner would have been authorized to stop his practice of dentistry entirely. Having the broad power to so act, the hearing officer was justified in fashioning a less restrictive order assuring that any practice by Dr. Smith would be properly supervised by another dentist.

I am influenced by the fact that the statute refers not only to acts but to practice. Practice is defined in Black's Law Dictionary as:

> [r]epeated or customary action, habitual performance, a succession of acts of similar kind; habit; custom; usage; application of science to the wants of men; the exercise of any profession.[1]

Under the present circumstances when multiple deaths have been caused by the malpractice of dentistry, the term "practice" should be construed as including the entire practice of dentistry. In any event, where there have been substantial and numerous acts evidencing a lack of mature judgment in the practice of dentistry,[2] the order di-

---

17. *See e. g., Bradner v. Hammond*, 553 P.2d 1, 5 (Alaska 1976).

1. Black's Law Dictionary 1335 (4th ed. 1951).

2. Included in evidence before the hearing officer were the following examples of gross malpractice:

   Dr. Smith did not take medical histories. (Exhibits 27, 18, 32, 25, 24, 26, 15, 37). He seldom followed accepted pre-surgical proce-

dures. (Exhibits 27, 32, 17, 25, 24, 26, 15, 21, 35, 37). He put patients under anesthesia for hours at a time and, on occasion, when procedures ran into the lunch hour and the patients were not yet awake, he would clear the instrument tray and pull out his lunch and eat it off the tray. (Exhibits 15, 35). When lint would collect on the anesthetic machine, he was known to take a steel pick to pick it out and then use the same pick immediately afterward in a patient's mouth. (Exhibit 15).

recting that one stop those practices, to be meaningful, may severely restrict the manner in which dentistry is practiced.

It is my opinion that in order to protect the lives of patients, pending the outcome of license revocation proceedings before the state Board of Dental Examiners, the hearing officer's order was well within the statutory authority.

On occasion he would instruct his assistants to mix drugs together in the same syringe even though there was a great risk of drug contamination. (Exhibit 12).

His office lacked basic emergency equipment. (Exhibits 15, 19). He seldom closely monitored patients. (Exhibits 15, 19). He was known to undertake surgical procedures on the weekend or evenings by himself. (Exhibits 21, 37). Patients who remained "under" after the conclusion of the procedure were taken to an empty recovery room where they would be left alone. (Exhibits 21, 37). Sometimes these individuals would leave without further contact with the doctor or his assistants. The assistants themselves were seldom trained except to the extent the doctor himself provided instruction. [footnote omitted]

There were deaths. Not simply those that led to his conviction, but others as well . . *at least* five. (Rec. on Appeal 846–928). In *at least* three of those instances, the surgical procedure involved was fillings.

After his conviction for assault in connection with the deaths of two of his patients, Dr. Smith ceased to practice dentistry and oral surgery until at least 1976, and possibly early 1977. During the intervening years, Dr. Smith made no attempt to keep himself current in the field of oral surgery. There is, for instance, no record that Dr. Smith ever attended any continuing education program in the interim. (Rec. on Appeal 613–14)